Argued and submitted April 24, reversed and remanded July 26, 1989

# INDUSTRIAL INDEMNITY COMPANY,
### *Appellant,*

### *v.*

# PACIFIC MARITIME ASSOCIATION,
### *Respondent.*

## (TC A8605-02657; CA A48626)

777 P2d 1385

I. Franklin Hunsaker, Portland, argued the cause for appellant. With him on the briefs were Christopher A. Rycewicz and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondent. With him on the brief was Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals from a judgment[1] declaring that it had a duty to defend a longshoreman's employment discrimination claim against defendant (PMA). The claim included allegations that the longshoreman (Hill) was intentionally discriminated against because of his race. We reverse.

Plaintiff, whose home office is in California, issued, in California, a standard comprehensive general liability policy to PMA, a California corporation and an association of 120 steamship, stevedore and terminal companies that operate in Oregon, Washington and California. The companies do not hire longshoremen permanently, but use hiring halls operated by a committee whose members are drawn from labor unions and PMA member companies. The halls are staffed by union employes who dispatch longshoremen to load or unload ships when requested by PMA members. The committee and the local unions are named as additional insureds under plaintiff's policy.

Hill filed a claim in federal court in Oregon against defendant, the committee and a local union. He alleged that the local union had engaged in intentional discriminatory conduct against him in Oregon by refusing to afford him certain job assignments because of his race. He also alleged that he had suffered emotional distress as a result. PMA tendered its defense to plaintiff, and plaintiff refused. After PMA provided its own defense, plaintiff filed this declaratory judgment action to determine its responsibility, if any, for the expenses incurred by PMA. The trial court granted a summary judgment in favor of PMA.

In its assignment of error, plaintiff makes three major arguments: (1) The court erred in applying California law rather than Oregon law; (2) the court erred in concluding that Hill had alleged an "occurrence" within the meaning of the insurance policy; and (3) the trial court erred in ruling that the complaint in the underlying action alleged a "bodily injury" within the terms of the policy.

**1, 2.** Plaintiff argues that Oregon law applies in determining whether it had a duty to defend PMA, because Hill was an

---

[1] The trial court granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment.

Oregon employe and the alleged injury took place in Oregon as a result of defendant's business activities in Oregon. Although the law of the forum applies regarding matters of procedure, issues of substantive law must be resolved by the law of the state with the most contacts. *See Davis v. State Farm Mut. Ins.,* 264 Or 547, 549, 507 P2d 9 (1973); *Aetna Casualty and Surety Co. v. Brathwaite,* 90 Or App 109, 116-17, 751 P2d 237, *rev den* 305 Or 672 (1988). The issue turns on the interpretation of the terms of an insurance policy contracted for and issued in California. The insurer has its home office in California, and the insured is a California corporation. Furthermore, the policy was issued with a special "California Amendatory Endorsement" that controlled cancellation of the policy. Because of these contacts, we hold that California has the more significant relationship to the parties and their insurance contract, and the trial court correctly held that California law applies.[2]

Plaintiff next argues that no "occurrence," as defined by its policy, was alleged by Hill as a matter of law, because his complaint alleges that the committee and the local union acted "intentionally." The policy defines "occurrence":

" 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury * * * neither expected nor intended from the standpoint of the insured * * *."

**3.** Under California law, an insurer must defend a claim that *potentially* seeks damages within the coverage of the policy. In *CNA Cas. of California v. Seaboard Sur. Co.,* 176 Cal App 3d 598, 606, 610, 222 Cal Rptr 276 (1986), the court said:

"[T]he duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insured must defend an action against its insured * * *.

"* * * * *

"Before an insurer may rightfully reject a tender of defense, it must investigate and evaluate the facts expressed or implied in the third party complaint as well as those it learns from its insured and any other sources."

---

[2] Because PMA transacts business in three states, the parties would face the anomaly of three potential varying interpretations of their contract, if the law of the forum were applied.

Hill alleged that he was the victim of intentional discrimination.[3] Plaintiff relies on *St. Paul Fire & Marine Ins. Co. v. Superior Court,* 161 Cal App 3d 1199, 208 Cal Rptr 5 (1984), and *Hartford Fire Ins. Co. v. Karavan Enterprises, Inc.,* 659 F Supp 1077, 1081 (ND Cal 1987), for the proposition that no coverage lies for an intentional act. *St. Paul* addressed whether an alleged wrongful termination of employment was an accidental event for the purposes of liability coverage. The policy defined an accidental event as something the insured "didn't expect or intend to happen." The court ruled that, for the purpose of coverage, the act of discharge was the determinative event and that an intentional discharge cannot constitute an unintended or unexpected occurrence. In *Hartford,* the court applied the rationale of *St. Paul* to policy terms identical to the terms in issue here, holding that an act of intentional termination of employment was not an "occurrence."

Defendant argues that the *Hartford* court mistakenly applied *St. Paul's* rationale, because "occurrence" is broader in meaning than the language in *St. Paul.* We disagree. The definition of "occurrence" in the *Hartford* policy included the same components as the definition of coverage in the *St. Paul* policy, although it is worded differently.

Defendant also argues that, because PMA could not have expected or intended that the additional insured would engage in intentional discrimination, an "occurrence," as defined by the policy, took place. In support of that argument, it relies on *Fireman's Fund Ins. Co. v. City of Turlock,* 170 Cal App 3d 988, 216 Cal Rptr 796 (1985), *Dart Industries, Inc. v. Liberty Mutual Insurance Co.,* 484 F2d 1295 (9th Cir 1973),

---

[3] Paragraph 5 of Hill's second amended complaint alleges that defendant is an association of stevedore companies. Paragraph 12 alleges that "plaintiff has requested to be selected by the Joint Labor Relations Committee of Defendant ILWA, Local 92 and the Association as a casual or supplemental walking boss. The Joint Labor Relations Committee of said defendants administers the agreement under which all Local 8 longshoremen are selected as casual walking bosses * * *." Paragraph 13 alleges that "said defendants and each of them, have intentionally discriminated against plaintiff * * *."

Locals of the International Longshoremen and Warehousemen's Union and Joint Labor Relations Committees were afforded liability coverage under an amendment to PMA's policy but "solely with respect to liability arising out of their duties as members of the Joint Labor Relations Committees Established Jointly with Pacific Maritime Association."

and *Arenson v. Nat. Automobile & Cas. Ins. Co.,* 45 Cal 2d 81, 84, 286 P2d 816 (1955), which hold that a California Insurance Code provision excluding coverage for the wilful act of an insured does not preclude coverage for vicarious liability, because a principal does not expect or intend that its agent will commit a wilful tort. The rationale underlying the statute is that a wrongdoer should not profit from or be indemnified against the effects of his own wrongdoing. *Dart Industries, Inc. v. Liberty Mutual Insurance Co., supra.* Because the principal is not the wrongdoer, the statute does not exclude coverage if there is otherwise coverage under the terms of the policy.

**4-6.** Under California law, the policy should be read as a layman would read it, interpreting the terms in an ordinary sense as a person of average intelligence and experience would read them. *Aas v. Avemco Ins. Co.,* 55 Cal App 3d 312, 320-21, 127 Cal Rptr 192 (1976). What is determinative of coverage is the nature of the act that creates the purported liability. *Hartford Fire Ins. Co. v. Karavan Enterprises, Inc., supra.* We do not believe that an average person would consider intentional discrimination to be an "accident" or a "condition which results in bodily injury neither expected nor intended." Therefore, we hold that there is no coverage.[4]

Reversed and remanded.

---

[4] Because we hold that there is no coverage, we do not discuss plaintiff's argument regarding whether Hill's allegations that he suffered emotional distress falls within the definition of "bodily injury."