Argued and submitted March 2, affirmed on appeal and cross-appeal
October 31, 2001

Stefanos VERTOPOULOS
and Nicholas D. Nicklos,
*Appellants - Cross-Respondents,*

*v.*

SISKIYOU SILICATES, INC.,
an Oregon corporation,
and R.A.M. Exploration, Inc.,
an Oregon corporation,
*Respondents,*

*and*

Raymond A. HUCKABA
and Lee Meyer,
*Respondents - Cross-Appellants,*

*and*

Markey L. JAMES,
*Defendant.*

9710-07751; A106573

34 P3d 704

Michael J. Morris argued the cause and filed the brief for appellants - cross-respondents.

Jonathan M. Radmacher argued the cause for respondents and respondents - cross-appellants. On the briefs were Christine Coers-Mitchell and McEwen Gisvold Rankin Carter & Streinz.

Before Edmonds, Presiding Judge, and Haselton and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Plaintiffs sold land to defendants, who intended to operate a mine on it. Defendants began mining the land but also began harvesting timber. Plaintiffs brought this action against defendants, alleging that they had cut the timber in violation of two land sale agreements. Defendants moved for summary judgment because the written land sale agreements did not prohibit them from cutting timber. The trial court granted defendants' motion and awarded them some but not all of the attorney fees they sought. Plaintiffs have appealed, and defendants have cross-appealed. We affirm on both the appeal and the cross-appeal.

■    Because this case arises on defendants' summary judgment motion, we state the facts in the light most favorable to plaintiffs. *See Olson v. F & D Publishing Co., Inc.*, 160 Or App 582, 584, 982 P2d 556 (1999). Plaintiffs owned 40 acres of land in Siskiyou County, California. In 1992, plaintiffs leased the mining and surface rights on the property to Custom Trading, Inc. According to plaintiffs, the lease prevented Custom Trading from removing or harvesting timber without first satisfying certain conditions.

In 1993, defendants Raymond Huckaba and Lee Meyer, the principals of defendant Siskiyou Silicates, Inc., began discussions with plaintiffs about buying plaintiffs' land and mineral rights. During those talks, Siskiyou orally agreed to assume the conditions of Custom Trading's lease. Siskiyou also orally agreed that the timber would serve as security for the purchase price; no timber would be cut until the purchase price was paid.

On June 14 and 15, 1993, plaintiffs and Siskiyou signed two "letters of intent." Each letter recites that it is "an understanding of an agreement" reached between the parties. The June 14, 1993, letter recites that Siskiyou agreed to buy the surface and mineral rights on 35 acres and the mineral rights on five of the 40 acres for $140,000. The June 15, 1993, letter recites that Siskiyou agreed to buy 35 acres of the land for $140,000.[1] Each letter states that Siskiyou will pay

---

[1] In his deposition, Huckaba confirmed that Siskiyou and plaintiffs entered into two separate agreements to purchase a single piece of land along with the

$20,000 of the purchase price by the closing date and that the balance will be paid in monthly installments over a seven-year period. Neither letter prohibits Siskiyou from cutting any trees or refers to the timber in any way. Three months later, on September 17, 1993, Siskiyou gave plaintiffs a note for $120,000 and a deed of trust to secure the note.

Immediately after signing the letters of intent, Siskiyou took possession of the property and began mining and timber harvesting operations. It failed, however, to make the payments that it owed. When confronted with that fact, Siskiyou sought to defer payment until March 1, 1994. In response, plaintiffs asked defendants Huckaba and Markey James to sign a note dated November 1, 1993, in which Huckaba and James would agree to pay $93,595 over a three-year period.

Sometime after February 3, 1994, plaintiffs signed a letter of intent that purports to memorialize a February 3, 1994, agreement among plaintiffs, Huckaba, and James. That letter recites that plaintiffs had agreed to sell the mineral rights to Siskiyou Silicates and that Huckaba and James had agreed to "assume the rights of the agreement of Siskiyou Silicates" in return for making certain payments to plaintiffs and for signing and delivering the November 1, 1993, note to plaintiffs. The record does not show that either Huckaba or James signed the February 3, 1994, letter of intent, although a signed copy of the November 1, 1993, note is attached to the partially signed letter of intent.

It appears that the February 1994 sale to Huckaba and James was never completed; instead, Huckaba and James formed a new corporation, R.A.M. Exploration, Inc., which agreed in May 1994 to assume Siskiyou's obligations under the June 1993 letters of intent. In his affidavit, plaintiff Stefanos Vertopoulos states that a letter of understanding was prepared on May 17, 1994.[2] The record also reflects

---

mineral rights. He explained that the transaction was structured that way for tax purposes.

[2] In their motion for summary judgment, defendants took the position that a copy of the February 3, 1994, letter of understanding among plaintiffs, Huckaba, and James embodied the agreement between plaintiffs and R.A.M. Plaintiffs did not dispute that statement, but confirmed it. In his affidavit submitted in opposition to defendants' summary judgment motion, plaintiff Vertopoulos stated:

that, on May 17, 1994, defendant R.A.M. signed, and defendants Huckaba and James personally guaranteed, a note to plaintiffs for $140,000. The May 17, 1994, note was secured by a deed of trust.

In 1997, plaintiffs sued defendants for breach of contract. They alleged that Siskiyou had entered into a land sale agreement on June 15, 1993, that permitted defendants to remove minerals but "prohibited [them] from removing any standing timber until the full purchase price was paid." Plaintiffs also alleged, and defendants admitted, that R.A.M. entered into a land sale agreement on May 17, 1994, in which it agreed to purchase the Siskiyou County property. Plaintiffs claimed that defendants had removed standing timber in violation of both agreements.

Defendants moved for summary judgment because none of the documents surrounding the land sale agreements contained a promise not to cut timber.[3] Defendants reasoned that the statute of frauds barred plaintiffs from enforcing any oral promise that defendants had allegedly made as part of the land sale agreement. Plaintiffs responded, among other things, that defendants had partly performed and that that was sufficient to take the case out of the statute of frauds. Alternatively, they argued that their "equity was so great" that it would be unconscionable to apply the statute of frauds. The trial court granted defendants' summary judgment motion and later awarded only defendant Huckaba attorney fees.

---

"A new corporation was found [sic] to be operated by Raymond A. Huckaba and Markey James. We agreed, after negotiations, to the same terms and conditions that Siskiyou Silicates, Inc. had with us, and a letter of understanding was prepared on May 17, 199[4] (Ex-8) with a note signed on that same date (Ex-9) with R.A.M. Exploration, Inc., with personal guarantee by defendants Huckaba and Meyer [sic]."

Although the affidavit refers to Exhibit 8 as the May 17, 1994, letter of understanding between plaintiffs and R.A.M., that exhibit is a copy of the February 3, 1994, letter of intent among plaintiffs, Huckaba, and James.

[3] Defendants moved for summary judgment twice. The first time, the trial court granted summary judgment in their favor but vacated its opinion because it had a perceived conflict of interest. The case was assigned to a different judge. When defendants moved for summary judgment a second time, plaintiffs submitted additional factual material and arguments in response. In summarizing plaintiffs' arguments, we rely on their response to the second summary judgment motion.

■ Plaintiffs' first two assignments of error are directed at the trial court's ruling granting defendants' summary judgment motion.[4] Most of the issues that plaintiffs raise on appeal in support of those assignments of error were not raised below, and the issues that they did preserve below provide no basis for saying that the trial court erred in granting defendants' summary judgment motion. *See Miller v. Salem Merchant Patrol, Inc.*, 165 Or App 266, 272-73, 995 P2d 1206 (2000). We accordingly affirm the trial court's summary judgment ruling without further discussion.

■ Plaintiffs' third assignment of error is directed at the trial court's award of attorney fees to defendant Huckaba. Huckaba responds that plaintiffs brought an action on the 1994 land sale agreement and that the 1994 "land sale agreement" consists of the May 1994 letter of understanding, the grantors' deed, the 1994 note, and the 1994 trust deed. More specifically, Huckaba observes that the note that R.A.M. gave plaintiffs authorizes an award of fees "[i]f action be instituted on this note."[5] Huckaba also relies on two provisions of the 1994 trust deed as the basis for recovering fees against plaintiffs.

■ We start with the choice of law. As noted above, the parties agree that California law governs their rights under the contract. *See* n 5 above. It follows that California law also governs defendant Huckaba's right to recover fees under the contract. *See Gorman v. Boyer*, 274 Or 467, 470, 547 P2d 123 (1976); *Seattle-First National Bank v. Schriber*, 51 Or App 441, 448, 625 P2d 1370 (1981). Huckaba's fee claim raises three issues. The first is whether the note and trust deed are separate from or part of the "land sale agreement" on which plaintiffs brought this action. On that point, the California courts have explained that "it is the general rule that several

---

[4] Both parties agree that California law governs their rights under the June 1993 and May 1994 land sale agreements. *See Manz v. Continental American Life Ins. Co.*, 117 Or App 78, 80, 843 P2d 480 (1992), *rev den* 317 Or 162 (1993) (describing how Oregon, as the forum state, resolves conflict of law issues); *Industrial Indemnity v. Pacific Maritime Assoc.*, 97 Or App 676, 679, 777 P2d 1385 (1989) (same). The law of the forum state, however, applies to procedural matters such as preservation of issues for appellate review. *Id.*

[5] The note provides: "If action be instituted on this note I promise to pay such sum as the Court may fix as attorney's fees."

papers relating to the same subject matter and executed as parts of substantially one transaction, are to be construed together as one contract." *Nevin v. Salk*, 45 Cal App 3d 331, 338, 119 Cal Rptr 370 (1975). In *Nevin*, the court considered a similar issue to the one that plaintiffs raise here—whether to allow an award of attorney fees based on a provision in one instrument when the sale agreement contained no fee provision. The court reasoned:

> "Inasmuch as the provisions of the notes and the security instruments were incorporated in the agreement, and made a part thereof, and inasmuch as the sale involved one piece of property * * *, the trial court properly concluded all the instruments formed a single contract and the fact the agreement itself contained no provision for payment of fees in the event of a lawsuit is of no consequence."

*Id.* The court also explained: "The documents need not be executed contemporaneously; it is a question of fact as to whether several writings comprise one transaction." In this case, the May 17, 1994, land sale agreement, note, and trust deed were all entered into on the same day. The trial cour t could, and implicitly did, find in ruling on defendants' fee petition that the various instruments formed one contract. *See id.*; *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

■■ Even though the various documents formed a single contract, the next question is whether the fee provision in the note was limited to an action to collect on the note or whether it applied to any action on the contract. On that point, subsection 1717(a) of the California Civil Code provides:

> "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

> "Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract,

and the fact of that representation is specified in the contract."

Cal Civ Code § 1717(a) (1998). The second paragraph in subsection 1717(a) was added to overturn an earlier decision limiting the scope of an attorney fee provision in a contract. *Harbor View Hills Community Assn. v. Torley*, 5 Cal App 4th 343, 348, 7 Cal Rptr 2d 96 (1992).[6] Under the second paragraph of subsection 1717(a), the parties may not "limit an award of attorney's fees to certain actions or specific provisions of the contract" unless the contract specifies that each party was represented in the negotiation and execution of the contract. *Id.* In effect, "section 1717 has been broadened to include all contract actions which include provisions for attorney's fees." *Sears v. Baccaglio*, 60 Cal App 4th 1136, 1148, 70 Cal Rptr 2d 769 (1998).

None of the documents that make up the May 1994 land sale agreement specifies that the parties were represented by counsel in negotiating and executing the contract. It follows that, under the second paragraph of subsection 1717(a), the fee provision in the note authorized defendants to recover fees if they prevailed on any action to enforce the contract. Accordingly, Huckaba could rely on that fee provision to recover on plaintiffs' breach of contract claim against him.

■ The final issue is whether the fact that only the corporate defendants were parties to the letters of understanding bars Huckaba from recovering attorney fees. Under California law, because plaintiffs had sued Huckaba for breaching the contract and lost, Huckaba may rely on the attorney fee provisions in the contract to recover fees from plaintiffs. *See Reynolds Metals Co. v. Alperson*, 25 Cal 3d 124, 128, 158 Cal Rptr 1, 2-3, 599 P2d 83 (1979); *Milman v. Shukhat*, 22 Cal App 4th 538, 545, 27 Cal Rptr 2d 526 (1994);

---

[6] In response to *Sciarrotta v. Teaford Custom Remodeling, Inc.*, 110 Cal App 3d 444, 167 Cal Rptr 889 (1980), a case allowing "the contracting parties to limit an attorney's fee clause to specific provisions of the agreement or a certain type of action[, t]he Legislature amended [section 1717] in 1983 to add the following paragraph to subdivision (a): 'Where a contract provides for attorney's fees, * * * that provision shall be construed as applying to the *entire contract*.' " *Harbor View Hills Community Assn.*, 5 Cal App 4th at 346 (emphasis in original).

*Leach v. Home Sav. and Loan Ass'n*, 185 Cal App 3d 1295, 1307, 230 Cal Rptr 553 (1986).[7] That is true even though Huckaba was not a party to the agreement. *Id.* The trial court did not err in awarding fees to Huckaba.

■■ Defendants raise two issues on cross-appeal. They acknowledge, and we agree, that the first issue is moot if we affirm the trial court's ruling on summary judgment. They also argue that the trial court erred in apportioning fees between defendants Huckaba and Meyer. The court found that Huckaba was entitled to recover his fees but that Meyer was not. On cross-appeal, Huckaba argues that, because his and Meyer's defense involved common issues, the trial court should not have reduced the amount of fees that it awarded him. We review the trial court's decision apportioning fees for abuse of discretion. *R & C Ranch, LLC v. Kunde*, 177 Or App 304, 316-17, 33 P3d 1011 (2001). This is not a case in which a single defendant prevailed on one claim but not another and the two claims involve common issues. *See Bennett v. Baugh*, 164 Or App 243, 247, 990 P2d 917 (1999), *rev den* 330 Or 252 (2000). Rather, this is a case in which one defendant is entitled to fees and the other is not for the same legal work. The trial court did not abuse its discretion in recognizing that both Huckaba and Meyer were jointly responsible for the fees and apportioning the fee award accordingly.

Affirmed on appeal and cross-appeal.

---

[7] The court explained in *Milman*:

"As long as an action 'involves' a contract, and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit, the other party should also be entitled to attorney fees if it prevails, even if it does so by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract."

22 Cal App 4th at 545.