ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   NC-13-1455-KuDJu |
| ) | |
| PAUL DUNCAN GILLESPIE, ) | Bk. No.   09-55224 |
| ) | |
| Debtor. ) | Adv. No.  09-05208 |
| _____ ) | |
| ) | |
| RAYMOND A. BECHTOLD, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **OPINION** |
| ) | |
| PAUL DUNCAN GILLESPIE, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on July 24, 2014
at San Francisco, California

Filed – August 28, 2014
_____

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Arthur S. Weissbrodt, Bankruptcy Judge, Presiding
_____

Appearances:   Marc L. Shea of Shea & McIntyre, A.P.C argued for
appellant Raymond A. Bechtold; Wayne A. Silver
argued for appellee Paul Duncan Gillespie.
_____

Before:  KURTZ, DUNN and JURY, Bankruptcy Judges.

KURTZ, Bankruptcy Judge:

## INTRODUCTION

For purposes of the discharge injunction, when does an attorney's fees claim arise? When the fees are incurred or when the underlying claim arises? The bankruptcy court held that, because the debtor's participation in postpetition litigation was "not entirely voluntary," the creditor's fees claim arose prepetition and hence was subject to the debtor's chapter 7[1] discharge. In so holding, the bankruptcy court distinguished <u>Boeing N. Am., Inc. v. Ybarra (In re Ybarra)</u>, 424 F.3d 1018, 1026-27 (9th Cir. 2005).

We disagree with the bankruptcy court. The bankruptcy court misconstrued the meaning of voluntariness as used in <u>Ybarra</u> and did not identify any meaningful distinction between <u>Ybarra</u> and the instant case. Accordingly, we REVERSE AND REMAND.

## FACTS

The debtor, Paul Duncan Gillespie, owned and controlled several companies, including Dymatix, Inc. At the time of Gillespie's chapter 7 bankruptcy filing, Gillespie and his companies were parties to a lawsuit commenced by Raymond Bechtold in the Santa Clara County Superior Court (Case No. 08-CV-119735). The state court lawsuit arose from Gillespie's default on a loan, which in turn led the lender, Giga-tronics, Inc., to sell all of its interest in the collateral securing the loan to Bechtold.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

This collateral apparently consisted of much of Dymatix's assets including its general intangibles and its intellectual property. Bechtold then attempted to enforce his right to possession of the collateral, which right Gillespie and Dymatix disputed. Among other things, Gillespie and Dymatix asserted that Giga-tronics' sale of the collateral to Bechtold constituted a wrongful foreclosure because Giga-tronics failed to obtain possession of the collateral before conducting the sale. In addition, Gillespie and Dymatix filed a number of cross-claims against Bechtold for breach of contract, conversion, breach of fiduciary duty and tortious interference with contractual relations.

On June 22, 2009, several days before Gillespie's bankruptcy filing, the state court issued an order providing for Gillespie's incarceration based on the failure of Gillespie and Dymatix to fully comply with the state court's prior prejudgment writ of possession, which had directed Gillespie and Dymatix to turn over all of the collateral to Bechtold. Dymatix filed its chapter 7 bankruptcy at the same time as Gillespie (Bk. No. 09-55233).

The commencement of the bankruptcy cases on July 1, 2009, did not result in the cessation of the litigation between the parties. To the contrary, the litigation expanded into the bankruptcy court forum. Among other things, Bechtold filed a series of relief from stay motions seeking permission to pursue his state law remedies in the state court. Bechtold also filed adversary proceedings against Dymatix and Gillespie seeking a bankruptcy court determination of his ownership of and entitlement to the collateral. In addition, Bechtold's adversary complaint against Gillespie initially contained claims for relief

3

under §§ 523(a)(2) and (4), but Bechtold later abandoned his exception to discharge claims by omitting them from his third amended complaint filed in February 2010.

In response to the third amended complaint, Gillespie filed in March 2010 an answer and roughly a dozen counterclaims against Bechtold. The counterclaims largely mirrored the cross-claims Gillespie had filed in the state court. Whereas Gillespie has characterized his cross-claims and counterclaims as merely defensive in nature, the pleadings themselves tell a different story. Both his state court cross-claims and his bankruptcy court counterclaims requested compensatory damages, punitive damages, costs and attorney's fees.

In May 2010, the bankruptcy court granted Bechtold limited relief from the automatic stay to permit him to proceed with some aspects of the state court litigation. The relief from stay order explicitly prohibited Bechtold from enforcing any judgment he might obtain in the state court against Gillespie or Dymatix, or from seeking any damages for prepetition events. But the order explicitly permitted Bechtold to proceed to trial on the issue of his rights in the collateral. The order also stayed the two adversary proceedings Bechtold had filed against Gillespie and Dymatix, inasmuch as they sought essentially the same relief as Bechtold was seeking from the state court. Eventually, after Bechtold obtained the relief he was seeking from the state court, the bankruptcy court dismissed his adversary proceedings.

In October 2010, the state court held trial and in March 2011 issued a final judgment in favor of Bechtold. Among other things, the state court determined that, since July 2008,

4

Bechtold had been the owner of the collateral and was entitled to possession of the collateral. Based on that determination, the state court directed Dymatix and Gillespie to turn over any collateral still in their possession. The judgment furthermore enjoined Dymatix and Gillespie from any further use of the collateral. Additionally, the judgment ruled against Dymatix and Gillespie on all of their cross-claims. In a post-judgment order, the state court awarded against both Dymatix and Gillespie $134,573 in fees that Bechtold had incurred postpetition in litigating the dispute both in the state court and in the bankruptcy court.

Bechtold then filed two motions in the bankruptcy court seeking, among other things, permission to enforce both the non-monetary relief granted by the state court and its fee award. Between May 2011 and September 2013, a period of well over two years, Bechtold and Gillespie both filed numerous papers in the bankruptcy court regarding whether Bechtold should be permitted to enforce his right to possession and exclusive use of the collateral as well as his fee award.

In fact, by September 2011, the bankruptcy court by oral tentative ruling seemingly had resolved the fee issue. More specifically, the bankruptcy court orally ruled at a hearing held on September 23, 2011, that <u>Ybarra</u> applied to Bechtold's attorney's fee claim. According to the bankruptcy court, the fees incurred postpetition would be treated as a postpetition claim for purposes of the discharge injunction because Gillespie voluntarily returned to the fray and continued to litigate with Bechtold in the state court after Gillespie commenced his

5

bankruptcy case and even after Bechtold had abandoned his nondischargeability claims. After Bechtold abandoned his nondischargeability claims, the bankruptcy court reasoned, Gillespie could have exited the state court litigation without any concern of continuing exposure for prepetition debts in light of his bankruptcy discharge.

Instead of walking away from the state court litigation, the bankruptcy court noted, Gillespie took affirmative steps to resume that litigation. In particular, Gillespie objected to the chapter 7 trustee's proposed sale to Bechtold of the estate's interest in the state court lawsuit and in the collateral in exchange for a cash payment of $14,000. Then, Gillespie successfully overbid for the same property, agreeing to pay the chapter 7 trustee $32,000 to purchase essentially the same assets from the trustee. The court entered an order approving the sale to Gillespie in February 2010, shortly after Bechtold abandoned his nondischargeability claims against Gillespie.

In essence, the bankruptcy court determined that Gillespie affirmatively and voluntarily acted postpetition by purchasing the estate's interest in his disputed claims against Bechtold and the collateral and by voluntarily returning to the state court litigation to press those claims. But after the state court completely rejected all of Gillespie's claims, the bankruptcy court explained, Gillespie sought to characterize all of these claims as purely defensive in nature. Under these circumstances, the bankruptcy court concluded, Ybarra was apposite and its rule regarding the discharge of attorney's fees incurred postpetition should be followed.

6

Even so, the bankruptcy court's initial written order on the subject matter of Bechtold's motions, an order entered in October 2011, explicitly reserved all issues regarding the effect of the discharge injunction on Bechtold's entitlement to enforce the state court judgment.

At the conclusion of the September 23, 2011 hearing, the court indicated that there were two small lingering issues that still needed deciding. One concerned whether the state court properly included fees incurred by Bechtold in prosecuting his nondischargeability claims (before Bechtold abandoned those claims). The other concerned whether the bankruptcy court should forbear from issuing its final order on the matter until after Gillespie's state court appeal had run its course. The court continued the hearing so that it could ponder these issues.

In the ensuing months, the parties filed a seemingly endless series of supplemental papers, and the bankruptcy court held a number of continued hearings. Some of the papers and hearings addressed issues that already had been addressed by the court while others raised new issues. Nonetheless, on several occasions, the court orally re-confirmed or "finalized" its prior tentative ruling regarding the fee issue. For instance, in March 2012, the court stated as follows:

> At the last hearing held December 8th, 2011, the Court finalized the previous tentative ruling from September 2011 that Defendant, quote: ". . . returned to the fray by purchasing the bankruptcy estate's litigation rights and pursuing those rights in the State Court litigation." As a result the Chapter 7 discharge does not discharge Defendant's debt for post-petition attorney's fees and costs awarded by the State Court.

Hr'g Tr. (March 6, 2012) at 3:25-4:9. The court once again

7

orally re-confirmed its fee ruling at a hearing held in November 2012.

Nonetheless, in its final written decision on the fee issue, the court reversed itself and held that In re Ybarra did not apply and that the postpetition fees had been discharged. In so holding, the court primarily relied on the fact that Gillespie was a defendant in the state court litigation, whereas the debtor in Ybarra was the plaintiff. The bankruptcy court acknowledged that Gillespie affirmatively pursued its cross-claims in the state court litigation postpetition, but still concluded that Gillespie had not "voluntarily borne the risk of incurring attorneys' fees in pursuing the litigation" postpetition because Bechtold had initiated the litigation as plaintiff.

The bankruptcy court further reasoned that Gillespie's postpetition participation in the state court litigation "was not entirely voluntary" because, if he had not purchased the estate's interest in the collateral and in the state court litigation and had not thereafter pressed his claims in the state court, he would have forfeited any interest he had in the collateral, in his cross-claims and in his defenses against Bechtold's claims.

On September 9, 2013, the bankuptcy court entered its final memorandum decision and order, and Bechtold timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court correctly interpret In re Ybarra

8

when it concluded that Bechtold's fee claim constituted a prepetition claim and hence was covered by Gillespie's chapter 7 discharge?

**STANDARDS OF REVIEW**

The scope of a chapter 7 discharge is a question of law that requires use to construe the discharge provisions of the Bankruptcy Code. Hassanally v. Republic Bank (In re Hassanally), 208 B.R. 46, 48 (9th Cir. BAP 1997). We review questions of law de novo. Id.

**DISCUSSION**

The only question raised in this appeal is whether the attorney's fees the state court awarded against Gillespie constitute a prepetition debt or a postpetition debt for purposes of Gillespie's chapter 7 discharge.

A chapter 7 discharge releases the debtor from personal liability for debts arising "before the date of the order for relief under this chapter" and enjoins creditors from enforcing or collecting upon those debts. See § 727(b); see also § 524(a)(2); Heilman v. Heilman (In re Heilman), 430 B.R. 213, 218 (9th Cir. BAP 2010). Under the Bankruptcy Code, the term "debt" means liability on a claim. § 101(12). The existence of such a claim ordinarily is determined by reference to nonbankruptcy law – particularly state law. In re Hassanally, 208 B.R. at 49.

But federal law determines when a claim arises for bankruptcy purposes. SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.), 571 F.3d 826, 839 (9th Cir. 2009); Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1000 (9th Cir. 2006). To

9

ascertain when a claim arises for purposes of the discharge injunction, we must first consider the Bankruptcy Code's broad definition of the term "claim," which means a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or [a]

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

§ 101(5).

The Bankruptcy Code utilizes an exceptionally broad definition of the term "claim" in order to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." In re SNTL Corp., 571 F.3d at 838 (quoting Cal. Dep't of Health Servs. v. Jensen (In re Jensen), 995 F.2d 925, 929-30 (9th Cir. 1993)). This broad definition "is critical in effectuating the bankruptcy code's policy of giving the debtor a 'fresh start.'" In re Jensen, 995 F.2d at 930.

To facilitate this broad definition and the fresh start policy, the Ninth Circuit ordinarily employs the "fair contemplation" test in determining when a claim arises. See, e.g., In re SNTL Corp., 571 F.3d at 839; In re Zilog, 450 F.3d at 1000; In re Jensen, 995 F.2d at 930. This test dictates that a claim arises when the claimant "can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." In re SNTL Corp., 571 F.3d at 839 (citing Cool Fuel, Inc. v. Bd. of Equalization (In re

10

<u>Cool Fuel, Inc.</u>), 210 F.3d 999, 1007 (9th Cir. 2000)).

However, the Ninth Circuit has adopted a different standard for determining for discharge purposes when an attorney's fee claim arises. Under that standard, even if the underlying claim arose prepetition, the claim for fees incurred postpetition on account of that underlying claim is deemed to have arisen postpetition if the debtor "returned to the fray" postpetition by voluntarily and affirmatively acting to commence or resume the litigation with the creditor. <u>In re Ybarra</u>, 424 F.3d at 1026-1027. The <u>Ybarra</u> court explained that, "[e]ven if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free [postpetition] litigation at others' expense." <u>Id.</u> at 1026. The <u>Ybarra</u> court further explained that, while Congress intended the discharge to relieve debtors from costs associated with their prepetition acts even if such costs continue to accrue postpetition, it did not intend to insulate debtors from costs associated with postpetition acts. <u>Id.</u> at 1024 (citing <u>In re Hadden</u>, 57 B.R. 187, 190 (Bankr. W.D. Wis. 1986)).

The <u>Ybarra</u> rule applies regardless of whether the litigation begins prepetition or postpetition, regardless of the nature of the underlying claim, and regardless of the forum in which the postpetition litigation takes place. <u>See, e.g.</u>, <u>In re Ybarra</u>, 424 F.3d at 1023-24; <u>Siegel v. Fed. Home Loan Mortg. Corp.</u>, 143 F.3d 525, 533-34 (9th Cir. 1998); <u>Shure v. Vermont (In re Sure-Snap)</u>, 983 F.2d 1015, 1017-19 (11th Cir. 1993).

The bankruptcy court here acknowledged that Gillespie affirmatively acted to resume his participation in the state

11

court litigation with Bechtold. Gillespie did so by purchasing the estate's interest in the collateral and in the state court lawsuit and by litigating the state court action to its conclusion. Nonetheless, the bankruptcy court still held that Gillespie's return to the state court litigation was not voluntary within the meaning of Ybarra. The bankruptcy court concluded that Gillespie's postpetition litigation activity was not entirely voluntary because Gillespie stood to lose any interest he otherwise might have had in the collateral and in the cross-claims and defenses he asserted in the state court lawsuit unless he continued to actively assert those interests in the lawsuit.

But this cannot be what Ybarra had in mind when it stated that "Ybarra's actions to revive the state suit were sufficiently voluntary and affirmative to be considered 'returning to the fray.'" In re Ybarra, 424 F.3d at 1027. Any time debtors hold disputed claims or property interests at the time of their bankruptcy filing, those claims or interests are at risk of being forfeited unless they or their estate take postpetition action to preserve them. This was precisely the state of affairs each of the debtors faced in Ybarra, Siegel and Sure-Snap. Thus, in determining whether a debtor's postpetition actions were voluntary, Ybarra could not have meant that bankruptcy courts should assess whether the debtors were compelled to act to prevent the loss of their asserted interests and claims.

The bankruptcy court further ruled that Ybarra does not apply when, as here, the debtor is the named defendant in the postpetition litigation. According to the bankruptcy court,

12

*Ybarra* only should apply when the debtor is the named plaintiff. The bankruptcy court offered no explanation for this limitation of *Ybarra*, except to note that it had not found any cases in which the *Ybarra* rule had been applied to a debtor who engaged in postpetition litigation nominally as a defendant.

We disagree with the bankruptcy court's attempt to limit *Ybarra* in this manner. The focus of *Ybarra*'s inquiry does not turn upon who is named as plaintiff and who is named as defendant. Rather, the focus of the *Ybarra* inquiry is on the debtor's motivation for engaging in the postpetition litigation and whether the debtor "returned to the fray" to press his disputed claims and property interests or for some other purpose. See *id.* at 1023-24; see also *In re Sure-Snap Corp.*, 983 F.2d at 1018; *In re Hadden*, 57 B.R. at 190.

We acknowledge that these three decisions do not specify where the line between voluntary and involuntary always should be drawn. Nonetheless, these three decisions support the conclusion that Gillespie is not entitled to a discharge of Bechtold's postpetition attorney's fees given that Gillespie chose to resume his participation in the state court action postpetition in order to preserve his or her asserted interest in the collateral, in his cross-claims, and in his defenses to Bechtold's claims.

The bankruptcy court explicitly found here that Gillespie continued to pursue the state court litigation postpetition for these purposes. While the bankruptcy court later reversed itself regarding the voluntariness of Gillespie's postpetition actions, the bankruptcy court never reversed its findings regarding the underlying purposes of Gillespie's postpetition litigation

13

activity, and neither party appealed the bankruptcy court's findings in this regard. Consequently, we accept those findings as true. See Sachan v. Huh (In re Huh), 506 B.R. 257, 272 (9th Cir. BAP 2014) (en banc).

Moreover, we agree with these findings. The state court litigation was, at bottom, a dispute over ownership of the collateral, with each side using the litigation as an opportunity to assert their respective interests in the collateral and to assert claims for damages to the extent their respective property interests were interfered with.[2] Simply put, whichever side was nominally designated as the plaintiff and whichever was nominally designated as the defendant did not, in this instance, change the fundamental nature and purpose of the litigation.

The only other ground the bankruptcy court offered for distinguishing Ybarra was that the debtor there was offered a monetary settlement as an alternative to continued postpetition litigation, whereas Gillespie here was not offered any money in lieu of continuing to assert his interests in the collateral and the state court lawsuit. However, as we already have explained above, the focus of the Ybarra test is on the purpose of the postpetition litigation. Thus, any distinction regarding what, if anything, the debtor was offered to not pursue his or her

---

[2] Of course, as a result of Gillespie's bankruptcy discharge, by the time Gillespie resumed his participation in the state court action, Gillespie no longer had any exposure on account of Bechtold's damages claims arising from Gillespie's prepetition interference with Bechtold's property interests in the collateral. See generally In re Hassanally, 208 B.R. at 54-55 (holding that construction defects claims arose prepetition when the tortious conduct occurred and hence were discharged).

14

asserted interests and claims is immaterial, except to the extent it tends to demonstrate the underlying purpose of the postpetition litigation.

Aside from the bankruptcy court's reasoning, Gillespie similarly argues that he had no choice but to return to the fray, so the bankruptcy court correctly determined that his return to the fray was not voluntary.  As Gillespie puts it, he "never had the option of enjoying his fresh start, because Bechtold contended that Gillespie was wrongfully in possession of [the collateral], and that Gillespie's continued wrongful possession was actionable despite Gillespie's [c]hapter 7 discharge."  Aple. Resp. Brief (Jan 27, 2014) at p. 25.

Gillespie's argument is fallacious.  It improperly equates Gillespie's entitlement to a fresh start and his entitlement to the benefit of his chapter 7 discharge with an entitlement to indefinitely impede Bechtold's right as owner to exclusive use and possession of the collateral.  In other words, Gillespie's chapter 7 discharge rights did not alter or entitle him to alter Bechtold's property interests.  Bechtold's property interests passed through Gillespie's bankruptcy proceedings unaffected. See Dewsnup v. Timm, 502 U.S. 410, 418 (1992).  "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor in personam – while leaving intact another – namely, an action against the debtor in rem." Johnson v. Home State Bank, 501 U.S. 78, 84 (1991).

Moreover, Gillespie's argument is inconsistent with Ybarra's teaching that, "[i]f the debtor chooses to enjoy his fresh start by pursuing pre-petition claims . . ., he must do so at the risk

15

of incurring the post-petition costs involved in his acts." In re Ybarra, 424 F.3d at 1024 (quoting In re Hadden, 57 B.R. at 190).

In sum, the bankruptcy court committed reversible error because it misconstrued Ybarra. In addition to reversing the bankruptcy court's ruling, we must remand this matter for further findings. The record indicates that a portion of the attorney's fees Bechtold incurred postpetition were incurred while Gillespie was still under the cloud of Bechtold's nondischargeability claims. The bankruptcy court must determine whether and to what extent, before Bechtold abandoned his nondischargeability claims, Gillespie engaged in his postpetition litigation activity for the purpose of limiting or preventing his exposure on account of the nondischargeability claims. To that extent, under Ybarra, Bechtold's postpetition fees should be considered discharged. We express no opinion regarding how the bankruptcy court should apportion Bechtold's postpetition fees between those that are discharged and those that are not discharged. Instead, we leave it to the bankruptcy court to address that issue in the first instance.

**CONCLUSION**

For the reasons set forth above, we REVERSE AND REMAND.

16