Argued and submitted June 4, 2013, on appeal, attorney fees and costs against Taggart reversed; otherwise affirmed. On cross-appeal, affirmed November 26, 2014

SHERWOOD PARK BUSINESS CENTER, LLC,
an Oregon limited liability company,
*Plaintiff-Respondent*
*Cross-Appellant,*

*v.*

Brad TAGGART,
an individual;
and BT of Sherwood, LLC,
an Oregon limited liability company,
*Defendants-Appellants*
*Cross-Respondents,*

*and*

John BERMAN,
an individual,
*Defendant.*

BT OF SHERWOOD, LLC,
an Oregon limited liability company,
*Counterclaim Plaintiff-Appellant*
*Cross-Respondent,*

*and*

JOHN HOFFARD OF SHERWOOD, LLC,
an Oregon limited liability company,
*Counterclaim Plaintiff,*

*v.*

Terry W. EMMERT,
an individual;
Keith Jehnke, an individual;
and Sherwood Park Business Center, LLC,
an Oregon limited liability company,
*Counterclaim Defendants-Respondents*
*Cross-Appellants.*

Terry W. EMMERT, et al.,
*Counterclaim Plaintiffs,*

*v.*

BT OF SHERWOOD, LLC; et al.,
*Counterclaim Defendants.*
Washington County Circuit Court
C085540CV; A150753

341 P3d 96

John M. Berman argued the cause and filed the briefs for appellants-cross-respondents.

George W. Kelly argued the cause and filed the briefs for respondents-cross-appellants.

Before Ortega, Presiding Judge, and Hadlock, Judge, and Norby, Judge pro tempore.

HADLOCK, J.

**HADLOCK, J.**

Brad Taggart and BT of Sherwood, LLC (BT) (collectively, "defendants") appeal a supplemental judgment awarding Sherwood Park Business Center, LLC (SPBC) attorney fees and costs against Taggart and costs against BT. They assert on appeal that Taggart's prior discharge in bankruptcy prevented the court from entering an award of fees or costs against him in this case and, furthermore, that no fees or costs should have been awarded to SPBC because SPBC did not file a statement for attorney fees as required by ORCP 68 C(4) and UTCR 5.080. SPBC, along with two of its members, Terry Emmert and Keith Jehnke (collectively, "plaintiffs"), cross-appeal the supplemental judgment.[1]

The judgment resolving the claims underlying the trial court's attorney fee award was appealed separately. *Sherwood Park Business Center, LLC v. Taggart*, 261 Or App 609, 323 P3d 551, *rev den*, 355 Or 879 (2014). In that case, we affirmed the trial court's judgment, rejecting defendants' challenges to the trial court's resolution of the claims and counterclaims. Meanwhile, the court entered the supplemental judgment at issue in this case. We described the events that gave rise to this litigation in our earlier opinion. We repeat here those facts that are pertinent to our analysis.

## I.  BACKGROUND

"SPBC is a limited liability company that was formed in 1999 to develop a small office complex." *Id.* at 612. "After its formation in 1999, SPBC was initially managed by Taggart and had four original members—Taggart, Jehnke, John Hoffard, and Anthony Benthin. In 2003, Emmert purchased Benthin's interest and became a member of SPBC." *Id.* at 615 (footnote omitted).

"Late in 2004, Taggart began having financial difficulties and companies in which he was an owner or manager began to have cash flow problems. For at least one of those companies—Builder's, Inc.—Taggart diverted funds intended for payroll tax withholding to his own use. In early

---

[1] Taggart and BT were originally named as defendants in this case. Although Emmert and Jehnke were not originally plaintiffs in the case, we refer to them as plaintiffs along with SPBC for the sake of convenience.

2005, that company was placed in bankruptcy and Taggart disappeared for a period of time. Also in 2005, Taggart was removed as SPBC's manager and replaced by Jehnke.

"In addition to diverting funds from Builder's, Inc., in late 2004 or early 2005, Taggart diverted approximately $30,000 from SPBC for his own purposes. SPBC initiated an arbitration proceeding; Taggart was represented by attorney [John] Berman during that proceeding. Ultimately, the arbitrator concluded that Taggart had converted funds from SPBC and breached his fiduciary duty to that company. A judgment was entered in favor of SPBC and against Taggart in 2008. Eventually, Berman paid that judgment.

"\* \* \* \* \*

"In mid-2007, Berman advised Taggart to form an LLC and transfer his interest in SPBC to that LLC. Berman told Taggart that he could then freely sell his interest in the newly formed LLC to a third party without complying with restrictions imposed by the SPBC operating agreement on transfers of membership interests in SPBC. Berman assisted Taggart in forming BT (the new LLC) in July 2007. Taggart held 100 percent of the membership interests in that LLC and transferred his entire interest in SPBC to the LLC as its sole asset."

*Id.* at 615-16.

After Taggart had signed a document to transfer his interest in SPBC to BT, Berman e-mailed SPBC's attorney and informed him of the transfer; however, no "documentation of the transfer was provided to SPBC at that time." *Id.* at 617. "In late 2007, Berman took a security interest in Taggart's interest in BT to secure payment of his fees. Then, in December of that year, Berman agreed to purchase an interest in BT[.]" *Id.* Over several months, Berman paid a total of $200,000 and ultimately received Taggart's entire interest in BT. "Berman and Taggart kept Berman's purchase of Taggart's interest in BT a secret until August 2008 and did not provide documentation of the transfer until the trial court ordered them to do so in the course of this litigation." *Id.*

Late in 2008, SPBC commenced this litigation. In its operative complaint, among other things, it sought

to have the trial court expel Taggart from SPBC, declare that Taggart's attempted transfer of his interest in SPBC to BT was invalid, declare that BT had no interest in SPBC, and unwind the transactions between Taggart and BT.[2] It also sought attorney fees under the SPBC Operating Agreement.[3] BT, for its part, brought counterclaims in which it, among other things, sought equitable relief and asserted that Emmert and Jehnke[4] owed it a fiduciary duty and had breached that obligation. BT also alleged that, although it was not a party to the SPBC Operating Agreement, and "[n]otwithstanding that SPBC cannot assert attorney fees against [BT], since [SPBC] has asserted that the Operating Agreement's attorney fee clause applies, [BT is] entitled to recover [its] attorney fees unilaterally as the prevailing part[y]." Taggart, in a separate pleading, likewise asserted that he was "entitled to recover his attorney fees herein pursuant to Section 13.6 of [SPBC's] Operating Agreement and pursuant to ORS 20.105." Emmert and Jehnke, having been brought into the case by BT, brought their own claims. Among other things, they brought claims for declaratory relief and "[c]onspiracy to interfere with prospective economic advantage and contract," and sought attorney fees against BT under the SPBC Operating Agreement. SPBC later filed a pleading in which it "incorporate[d] and join[ed] in counterclaim defendants Terry W. Emmert and Keith Jehnke's counterclaims."

Before trial began, Taggart obtained a discharge of his debts in bankruptcy. The bankruptcy discharge, dated February 23, 2010, was filed with the trial court in March 2010. As discussed in our earlier opinion, Taggart filed a motion to dismiss the claims against him on the basis of the discharge.

---

[2] Berman was a defendant and counterclaim plaintiff in the underlying litigation; however, he is not a party on appeal.

[3] SPBC's first amended complaint alleges a claim for "Attorney fees—against all defendants." The text of the claim, however, asserts that, "if SPBC is a prevailing party, it is entitled to an award of attorney fees in its favor and against Taggart." The prayer for relief, likewise, seeks a judgment for "attorney fees incurred by SPBC against Taggart."

[4] As we noted in our original opinion, Emmert and Jehnke were originally brought into this case as third-party defendants and were later designated as counterclaim defendants. *See Sherwood Park Business Center, LLC*, 261 Or App at 611 n 3.

"At the beginning of the trial, the court addressed that motion. The court noted that it was 'not going to enter any money judgments against *** Taggart, but I think there's some other claims that involve him that don't involve money.' Taggart asserted, however, that an 'attempt to unwind anything *** would include [his] obligation to pay money back and that's *** a financial impact on him. I think the Bankruptcy Code says that pre-petition conduct cannot be relied upon to cause financial liability to [a discharged] person.' Plaintiffs stated that they did not seek any monetary relief against Taggart, and that dismissal was not appropriate because 'there is a nonmonetary claim for expulsion' and 'Taggart needs to remain in the case for purposes of the expulsion claim.' The court agreed:

"'I will not grant the motion to dismiss Mr. Taggart. Although I have already said and the other side has agreed that it's not a money judgment against him, but I think there are some technical claims that make him still technically a proper person in the lawsuit.'"

*Sherwood Park Business Center, LLC*, 261 Or App at 617-18 (ellipses and second brackets in original).

The case was then tried to the court. At the end of trial, the court announced its factual findings and legal conclusions. In particular, the court held that Taggart was subject to expulsion under ORS 63.209 and that it was appropriate to terminate Taggart's membership in SPBC. Furthermore, "the court determined that Taggart had not successfully transferred his SPBC membership interest to BT before that interest terminated[.]" *Id.* at 619. With respect to BT's claim for breach of fiduciary duty against Emmert and Jehnke, the court "concluded that there was no breach of fiduciary duty for two independent reasons: (1) as a matter of law, neither Emmert nor Jehnke owed fiduciary obligations to BT, and (2) even if they did owe a fiduciary duty, they did not breach it." *Id.* at 620.

After the trial, the parties did not agree as to the form of judgment that should be entered and, as a result, the court held a hearing at which the parties made arguments regarding the terms they believed that the judgment should contain. Taggart was present at that hearing but was not represented by an attorney. After hearing argument from

the attorneys, the court asked Taggart whether he "wish[ed] to argue anything at this juncture about what we're doing today?" Taggart replied:

"MR. TAGGART: Only—the only thing I'd like to say, Your Honor, is that if—if the date is in 2008, then they do—I feel they owe interest on that date. If it's not, then I—I deserved the—the tax benefit from that period of time. They can't have their cake and eat it too, in my opinion, so—

"THE COURT: Very well.

"MR. TAGGART: Fair is fair. Regarding the bankruptcy, my bankruptcy was discharged before you made your decision. There have been considerable payments made on the taxes already. We don't know what's the totals of those right now. My feeling is that any money that comes out of this should go into either an escrow account or Mr. Berman's trust account until we determine exactly what that number is. They're hopefully not going to be receiving a hundred percent of the proceeds * * *."

Taggart did not make any other argument during the hearing.

Ultimately, the court entered a general judgment as follows:

"1.    [SPBC] is entitled to judgment in its favor and against defendants Brad Taggart and BT of Sherwood, LLC * * * as follows:

"(1)   Brad Taggart's attempted transfer of his membership interest in [SPBC] to BT of Sherwood, LLC violated the Operating Agreement and Oregon law. The transfer is hereby deemed null and void;

"(2)   Brad Taggart engaged in wrongful conduct as a member of [SPBC]. Brad Taggart is hereby expelled from [SPBC] effective January 1, 2008.

"(3)   * * * Emmert and Jehnke have timely elected to purchase Taggart's 25% membership interest. Pursuant to Section 12.5 of the Operating Agreement, Keith Jehnke and Terry W. Emmert are entitled to purchase Brad Taggart's 25% membership interest in [SPBC] as follows:

"The purchase price shall be the fair market value of the Company as of the date of entry of Judgment multiplied

by Taggart's 25% membership interest, less any unpaid post-bankruptcy petition attorney fees, costs and prevailing party fees which might be assessed against Taggart pursuant to ORCP 68 and ORS Chapter 20 and necessary proceedings in bankruptcy court or this court.

"* * * * *

"2. * * * Emmert and Jehnke are entitled to judgment in their favor on their First Counterclaim (joined by [SPBC]) and it is hereby adjudged that: [BT was] not [a member] or authorized assignee[ ] of an existing member of [SPBC] in 2008, 2009, or the present. Accordingly, [it was] not and [is] not entitled to receive any distributions or allocations of profits or losses of [SPBC] since 2008.

"3. No parties are awarded money damages. All other claims, cross-claims, counterclaims, third-party claims, and counterclaims to third-party claims are dismissed with prejudice. Any party seeking fees or costs shall do so in accordance with ORCP 68."

Following entry of the general judgment, in June 2011, Emmert and Jehnke's attorney, Brown, filed a motion seeking attorney fees and costs from defendants in favor of plaintiffs.[5] At the same time, Brown and SPBC's attorney, Edelson, filed declarations in support of the petition for attorney fees and costs. BT objected to the petition. BT contended that no fees could be awarded against it because, it asserted, "SPBC has not filed either a petition for attorney fees or a cost bill," and Emmert and Jehnke's attorney could not file a "claim for attorney fees or costs on behalf of SPBC." In addition, BT asserted that SPBC had not alleged any right to fees against BT. BT further asserted that the other parties were seeking attorney fees pursuant to the SPBC Operating Agreement and statutory provisions relating to the imposition of contractual attorney fees, but, because BT was not a party to the Operating Agreement it could not be held liable for fees under that agreement. As to costs, BT asserted that Emmert and Jehnke were not prevailing parties as to BT and, therefore, were not entitled to recover costs against it.

---

[5] Plaintiffs sought attorney fees pursuant to both ORS 20.105 and the SPBC Operating Agreement. The court rejected the request for fees pursuant to ORS 20.105, and that ruling is not challenged on appeal.

Taggart similarly objected to any imposition of attorney fees or costs against him, pointing out that he had obtained a bankruptcy discharge before the trial in this case and asserting that "it would be a violation of [his] bankruptcy discharge to claim attorney fees or costs against [him] with regard to this matter."

In response to BT's objections, Edelson filed a supplemental declaration stating that Brown had filed the joint petition for attorney fees and costs "[u]pon [Edelson's] request and with [his] permission." Furthermore, he pointed out that SPBC had filed a pleading in which it adopted Emmert and Jehnke's counterclaims, which included a claim for attorney fees against BT. In addition, in a reply memorandum, plaintiffs asserted that, because Taggart (1) failed to dismiss his counterclaim for attorney fees, (2) filed a motion for protective order and motion to dismiss subsequent to the discharge, and (3) personally appeared and argued at the hearing regarding the form of judgment, he was "liable for attorney fees incurred post-discharge." As to BT, plaintiffs asserted that BT was liable pursuant to the SPBC Operating Agreement because "BT claimed to be the authorized assignee of Mr. Taggart's full membership interest and claimed benefits available under the Operating Agreement only to members of SPBC. BT's claims were based upon the Operating Agreement, and the Operating Agreement itself" provides for attorney fees for the prevailing party in an action to enforce or interpret a provision of the agreement.

The trial court held a hearing on the issue of attorney fees on August 1, 2011, and later issued a letter opinion resolving the issues presented by the parties' arguments. It concluded that the costs and the "hourly rate and time expended by counsels for the moving parties are reasonable."

With respect to the request for fees as to Taggart, the court observed that, pursuant to *In re Ybarra*, 424 F3d 1018 (9th Cir 2005), it had "power to award post-petition attorney fees against a debtor who continues to pursue litigation post-petition that had been begun pre-petition." With that standard in mind, the court concluded that it

was appropriate to award attorney fees and costs against Taggart regardless of the bankruptcy discharge:

> "Taggart filed an answer that was file stamped October 28, 2009. The answer contained a counterclaim for attorney fees based on Section 13.6 of the Operating Agreement.

> "The answer sought to have plaintiff's claim to be dismissed against him. This was consistent with the oral Motion to Dismiss raised at the time of trial. Taggart never abandoned his counterclaim for attorney fees. Rather he continued to pursue his position post-petition that the plaintiff's claim against him be dismissed which, if successful, would have led to Taggart having a contractual right to obtain attorney fees."

In contrast, the court declined to award attorney fees against BT. The court observed that counsel for SPBC had "directed the court to ORS 20.083 with the lawyerly comment that his 'enthusiasm for its applicability has diminished.'" Ultimately, the court concluded that BT "was not a party to the contract. Taggart never successfully assigned his interest to" it. Thus, BT "cannot be liable for attorney fees based on the contract."

On the issue of costs, the trial court determined that SPBC was the prevailing party with respect to both Taggart and BT and was entitled to costs. However, the court did not award costs to Emmert and Jehnke, concluding that neither Emmert and Jehnke nor BT were "prevailing parties with respect to each other." The court also "relie[d] expressly on ORCP 68 B which grants the court discretion ('unless the court otherwise directs') vis a vis costs and disbursements."

Based on those rulings, the trial court entered a supplemental judgment awarding SPBC $45,404.30 in attorney fees and costs from Taggart and $3,309.95 in costs from BT. The judgment provided that Emmert and Jehnke were "not entitled to any award of fees or [c]osts from" Taggart or BT.

## II.  ANALYSIS

As noted, defendants appeal the supplemental judgment, asserting that the trial court erred in entering a judgment for attorney fees and costs. Plaintiffs, for their part, raise two assignments of error on cross-appeal with

respect to the supplemental judgment. We begin by addressing defendants' contentions on appeal and then turn to the issues raised on cross-appeal.

## A. *Appeal—Fees and costs against Taggart*

Defendants first assign error to the trial court's award of attorney fees and costs against Taggart. They assert that Taggart's discharge in bankruptcy prevented an award of attorney fees or costs from being entered against him.

As the court explained in *Ybarra*, a bankruptcy discharge "releases the debtor from personal liability for [his or] her pre-bankruptcy debts." 424 F3d at 1022. A discharge "is the legal embodiment of the idea of the fresh start; it is the barrier that keeps the creditors of old from reaching wages and other income of the new." *Id.* (internal quotation marks omitted). However, where there is "post-petition voluntary action on the part of the debtor" that gives rise to a claim for attorney fees against him, the discharge may not prevent "the award of post-petition attorney fees." *Id.* at 1024. According to the court, "[e]ven if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free [post-petition] litigation at others' expense." *Id.* at 1026. Thus, "post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily 'pursue[d] a whole new course of litigation,' commenced litigation, or 'return[ed] to the fray' voluntarily." *Id.* at 1024 (quoting *Seigel v. Federal Home Loan Mortgage Corp.*, 143 F3d 525, 533-34 (9th Cir 1998)) (brackets in *Ybarra*). "Whether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a prepetition claim and thereby has risked the liability of these litigation expenses." *Id.* at 1026; *see In re Gillespie*, 516 BR 586, 592 (9th Cir 2014) (applying rule from *Ybarra* to conclude that the debtor was "not entitled to a discharge of * * * postpetition attorney fees" where the debtor "chose to resume his participation in the state court action post-petition in order to preserve his * * * asserted interest in the collateral, in his cross-claims, and in his defenses to [the other party's] claims").

Here, defendants assert, Taggart did not engage in any conduct post-discharge that constitutes a return to the fray and, therefore, the bankruptcy discharge bars entry of an award of attorney fees in this case.

We note that, while this appeal was pending, the United States District Court for the District of Oregon was presented with and decided this issue as to these parties. Taggart had sought to have Emmert, Jehnke, their attorney, and SPBC held in contempt for violating the bankruptcy discharge injunction by seeking attorney fees in this case. *Taggart v. Brown*, No 3:12-CV-00236-MO, 2012 WL 3241758 (D Or, Aug 6, 2012), *appeal dismissed*, 575 Fed Appx 719 (9th Cir 2014). After the bankruptcy court denied the motion for contempt, Taggart appealed to the district court. The court considered whether Taggart, in this case, had engaged in post-petition conduct that constituted a return to the fray. As the court noted,

> "Taggart did not commence the litigation at issue here, nor can the state court case be considered the commencement of a new suit. He did bring a counterclaim for attorney fees prepetition, which was eventually discharged back to him upon resolution of his Chapter 7 case, and which he never affirmatively moved to dismiss post-petition. [His] remaining involvement in the lawsuit post-discharge is described as follows. Prior to trial, Mr. Berman filed a motion for a protective order on behalf of Mr. Taggart in which he requested that a subpoena for Mr. Taggart's second deposition be quashed, as well as attorney fees in connection with the motion. Mr. Berman also filed a pre-trial motion to dismiss in which he sought to dismiss the claims against Mr. Taggart pursuant to his Chapter 7 discharge. Mr. Berman renewed the motion orally at the close of evidence. After the trial, and after [a form of judgment including attorney fees had been submitted], Mr. Berman filed an objection on behalf of himself and BT, in which he also argued that no attorney fees or costs, pre or post-bankruptcy, could be assessed against Mr. Taggart pursuant to *In re Ybarra*. * * * At the hearing with regard to Mr. Berman's objection, Mr. Taggart, who the state court had previously ruled maintained a 25% interest in [SBPC], appeared on his own behalf and argued in entirety that plaintiffs should have to pay interest on the purchase price

> of his interest in SPBC for the three years that had passed and that any proceeds from the subsequent transaction should go into an escrow account. Following the [general judgment], Mr. Taggart personally filed 'Objections to Attorney Fees and Costs,' and a Notice of Appeal. In the former, he argued that any claim for fees or costs violated his Chapter 7 discharge."

*Id.* at * 4 (internal citations omitted).

The district court then considered whether Taggart's actions were "sufficiently affirmative and voluntary to constitute returning to the fray." *Id.* It concluded that they were not. According to the district court, Taggart's objection to the second deposition was simply a reaction "to what he viewed as an oppressive litigation strategy as opposed to affirmatively committing an act that forced [the other parties] to incur post-petition legal fees." *Id.* Likewise, Taggart's assertions to the trial court that he could not be held liable for attorney fees "were reactionary and solely in response to a potential judgment against him for attorney fees, as opposed to affirmative and voluntary actions for the purpose of seeking attorney fees for himself." *Id.* The district court also concluded that Taggart's remaining actions did not constitute voluntary, affirmative post-petition conduct that would subject him to liability for attorney fees. The court explained that Taggart merely sought to extricate himself from the case by way of the motion to dismiss in light of the bankruptcy discharge and "did not move to dismiss the claims against him on the merits." *Id.* at * 5. Similarly,

> "the fact that Mr. Taggart failed to affirmatively dismiss his counterclaim does not change the conclusion either, because the [other parties] here never requested that Mr. Taggart dismiss his counterclaim after arguing that he should remain in the case, nor did Mr. Taggart's failure to seek dismissal of the counterclaim cause [the opposing parties] to take action themselves lest they face judgment. Lastly, Mr. Taggart's actions in requesting to be dismissed pursuant to his bankruptcy injunction, opposing the second deposition, and failing to dismiss his counterclaim should not have indicated to [SPBC, Emmert, and Jehnke] that he affirmatively intended to seek attorney fees."

*Id.* Accordingly, the court reversed and remanded the bankruptcy court's ruling that the parties seeking attorney fees from Taggart were not in contempt.

We agree that Taggart's post-petition conduct before the trial court in this case was not voluntary, affirmative post-petition action such that he should have been held liable for attorney fees. Post-petition, Taggart moved to dismiss the claims against him on the basis of the bankruptcy petition. He did not seek a ruling on the merits of the claims against him but, rather, sought to extricate himself from the litigation and thereby obtain the fresh start the bankruptcy was intended to afford him. Taggart did not participate in the trial of the case. Although he spoke briefly at the hearing on the form of the judgment after the court refused to dismiss him from the litigation, Taggart's comments—in response to a question from the court—were minimal. He merely stated that he believed interest should accrue beginning in 2008—the date that he was deemed expelled from SPBC—and that any funds should be put into an escrow account. In our view, those actions were not the type of voluntary affirmative acts that would constitute a return to the fray of litigation. Likewise, Taggart's remaining actions, such as his objection to the imposition of fees or costs against him based on the bankruptcy discharge, were simply attempts to shield himself from the continued litigation and do not provide a basis for the imposition of attorney fees. Finally, Taggart's failure to dismiss his counterclaim for attorney fees does not amount to the "pursu[it of] a whole new course of litigation, commence[ment of] litigation, or return[ing] to the fray voluntarily." *Ybarra*, 424 F3d at 1024 (internal quotation marks omitted). Rather than engaging in affirmative action to continue the litigation, Taggart passively failed to take action. In sum, we agree that Taggart did not engage in conduct that, under *Ybarra*, would result in liability for post-petition attorney fees before the trial court. Accordingly, we conclude that the court erred in awarding SPBC fees and costs against him.

B.  *Appeal—Costs against BT*

Next, defendants assert that, in any event, no award of attorney fees or costs could be entered in favor of SPBC

because it did not file a statement for attorney fees or costs under ORCP 68 C(4).[6] In particular, they assert that SPBC failed to properly file a statement for attorney fees and costs under ORCP 68 C(4) because the statement that was filed, although purportedly on behalf of SPBC as well as Emmert and Jehnke, "was only signed by the attorney for Emmert and Jehnke." We reject that contention.

Under ORCP 68 C(4)(a), a "party seeking attorney fees or costs and disbursements shall, not later than 14 days after entry of judgment":

> "C(4)(a)(i)   File with the court a signed and detailed statement of the amount of attorney fees or costs and disbursements that explains the application of any factors that ORS 20.075 or any other statute or rule requires or permits the court to consider in awarding or denying attorney fees or costs and disbursements, together with proof of service, if any, in accordance with Rule 9 C; and

> "C(4)(a)(ii)   Serve, in accordance with Rule 9 B, a copy of the statement on all parties who are not in default for failure to appear."

*See also Jaffe v. The Principle Company*, 215 Or App 385, 391, 170 P3d 4 (2007) ("ORCP 68 C(4) requires that a party seeking attorney fees and costs must file its statement within 14 days after the judgment has been entered.").

Here, the attorney fee petition was filed within 14 days of the trial court's entry of the general judgment. The petition was signed by Emmert and Jehnke's attorney, Brown, and explicitly sought attorney fees on behalf of SPBC as well as Emmert and Jehnke. It was accompanied by a declaration from SPBC's attorney, Edelson. In that declaration, which Edelson signed under penalty of perjury, he, among other things, detailed the fees and costs that he requested, discussed his education and experience, talked about the other attorneys who had worked on the case and their experience and hourly rates, and explained why the fees sought were reasonable under all the circumstances of

---

[6] As we have already explained, the award of attorney fees and costs against Taggart was improper in light of the bankruptcy discharge. However, the court also imposed costs against BT.

this case. As noted, in a second declaration, Edelson stated that Emmert and Jehnke's attorney had filed the petition for fees and costs on behalf of SPBC along with his own clients and had done so upon Edelson's request and with his permission. Suffice it to say that, in our view, the petition and accompanying declarations satisfied the requirement of ORCP 68 C(4) that a party seeking attorney fees or costs and disbursements file a signed detailed statement of the amount of attorney fees or costs within 14 days after entry of judgment.

Defendants raise additional complaints with respect to the schedule of fees and costs under UTCR 5.080 which we reject without discussion. In sum, we conclude that the trial court did not err in awarding costs in favor of SPBC and against BT.

C. *Cross-appeal—Denial of attorney fees against BT*

As noted, with respect to SPBC's entitlement to recover its attorney fees from BT, the trial court concluded that, because BT was not a party to the contract which contained the attorney fee provision, BT could not be liable for attorney fees. On cross-appeal, plaintiffs assert that the trial court erred "in ruling that there could not be an attorney fee award against BT." In plaintiffs' view, attorney fees could be awarded against BT under ORS 20.096 and ORS 20.083 even though BT was not a party to the Operating Agreement. Defendants respond that SPBC did not allege a right to attorney fees in its pleadings and that, in any event, because "there was no contract providing for an award of attorney fees to which BT was a party, no attorney fees were awardable * * * against BT."[7]

We begin by noting that defendants are incorrect in their assertion that SPBC did not allege a right to fees against BT in its pleadings. Defendants observe that, in the text of its complaint, SPBC asked for attorney fees against Taggart only. However, defendants fail to note that, in response to defendants' answer and counterclaims, Emmert

---

[7] Defendants also assert that SPBC cannot be awarded attorney fees because it failed to file a statement for attorney fees, a contention that we discussed and rejected in our analysis of defendants' contentions on appeal.

and Jehnke filed counterclaims, including a claim for attorney fees against BT and, in its pleading in response to defendants' counterclaims, SPBC "incorporate[d]" and "join[ed]" in Emmert and Jehnke's counterclaims. As plaintiffs point out, "[b]y incorporating and joining in the counterclaims filed by Emmert and Jehnke, SPBC *** alleged a counterclaim for attorney fees against BT."

Nonetheless, defendants contend that the trial court correctly declined to hold BT liable for attorney fees under a contract to which it was undisputedly not a party. The SPBC Operating Agreement lists as parties the original members of SPBC (Taggart, Hoffard, Benthin, and Jehnke) and "any other persons who are hereafter admitted as Members pursuant to the terms of this Agreement." Neither plaintiffs nor defendants in this case asserted that BT was a party to that agreement.

Under the attorney-fee provision of the agreement,

"[i]n the event of any suit or action or arbitration proceeding to enforce or interpret any provision of this Agreement (or which is based on this Agreement), the prevailing party shall be entitled to recover, in addition to other costs, reasonable attorney fees in connection with such suit, action, arbitration, and in any appeal therefrom. The determination of who is the prevailing party and the amount of reasonable attorney fees to be paid to the prevailing party shall be decided by the arbitrator (with respect to attorney fees incurred prior to and during the arbitration proceedings) and by the court or courts, including any appellate courts, in which the matter is tried, heard, or decided, including the court which hears any exceptions made to an arbitration award submitted to it for confirmation as a judgment (with respect to attorney fees incurred in such confirmation proceedings)."

Under ORS 20.083,

"[a] prevailing party in a civil action relating to an express or implied contract is entitled to an award of attorney fees that is authorized by the terms of the contract or by statute, even though the party prevails by reason of a claim or defense asserting that the contract is in whole or part void, a claim or defense that the contract is unenforceable

or *a claim or defense asserting that the prevailing party was not a party to the contract.*"

(Emphasis added.) Furthermore, pursuant to ORS 20.096(1),

"[i]n any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and *without regard to whether the prevailing party is a party to the contract.*"

(Emphasis added.) In plaintiffs' view, those provisions, taken together, demonstrate that BT can be charged with attorney fees in this case.

Defendants, for their part, contend that plaintiffs' understanding of the law is incorrect. In their view, "if a litigant is not a party to a contract that provides for attorney fees to the prevailing party, then attorney fees can never be awarded against that litigant. Being wrongfully sued for attorney fees does not make that litigant liable for attorney fees." We agree with defendants that, under the unusual circumstances presented in this case—where the prevailing plaintiff is a party to a contract but the losing defendant is not and never claimed to be—the agreement, ORS 20.083, and ORS 20.096 do not provide for attorney fees to be charged against the losing party. Neither of the statutes in question works to create liability for attorney fees under a contract against a party who was not alleged to be, and never claimed to be, a party to that contract. Thus, the trial court did not err.

"ORS 20.096 was enacted in 1971 to provide reciprocal rights to attorney fees for contracts containing one-sided attorney fee provisions." *King v. Neverstill Enterprises, LLC,* 240 Or App 727, 731, 248 P3d 30 (2011). As we explained in *King,* early on we interpreted that statute to authorize an "award of attorney fees to a defendant who had prevailed in [an] action by establishing that he was not a party to the contract that the plaintiff had sought to enforce against him." *Id.* at 732 (citing *Golden West Insulation v. Stardust*

*Investment Co.*, 47 Or App 493, 615 P2d 1048 (1980)). We reasoned that an attorney fee award was appropriate because, had the plaintiff prevailed at trial, it would have been entitled to an award of fees against the defendant. *Golden West*, 47 Or App at 512. Thus, early on the case law

> "essentially established a broad principle of reciprocity under ORS 20.096: *viz.*, if a plaintiff brings a claim against a defendant based on a contract that had an attorney-fee provision, and that provision would entitle the plaintiff to recover fees if the plaintiff prevailed, then the defendant against whom the claim was made is entitled to recover fees when the defendant prevails, without regard to the basis on which the defendant prevailed."

*King*, 240 Or App at 732. However, later cases undermined that broad reciprocity principle, holding that a defendant who prevailed in a contract action by asserting the contract was void or should be rescinded could not obtain fees under the contract. *Id.* at 732-33 (citing *Care Medical Equipment, Inc. v. Baldwin*, 331 Or 413, 15 P3d 561 (2000), and *Bodenhamer v. Patterson*, 278 Or 367, 563 P2d 1212 (1977)). "The legislature adopted ORS 20.083 in 2003 to overturn those cases and to reinstate the broad reciprocity principle for attorney-fee awards in contract actions involving contracts containing attorney-fee provisions." *Id.* at 733.

The text of ORS 20.083 "consists of two clauses— one operative and one explanatory." *A & E Security and Electronic Solutions v. Fortalesa*, 253 Or App 448, 450, 290 P3d 861 (2012) (citing *King*, 240 Or App at 734-35). The "operative clause conveys a broad entitlement to attorney fees under a contract when ORS 20.083 is applicable[.]" *Id.* (internal quotation marks omitted). The explanatory clause "identifies examples of circumstances in which it applies. That is, the operative clause applies 'even' in those circumstances, but not 'only in them[.]'" *Id.* at 451. The issue is whether, in enacting ORS 20.083, the legislature intended "the statute's operative clause to provide 'an award of attorney fees that is authorized by the terms of [a] contract,'" *id.* (brackets in *A & E Security and Electronic Solutions*), when the party from which fees are sought was a stranger to the contract. We conclude that it did not.

First, ORS 20.083 specifically refers to attorney fees "authorized by the terms of [a] contract." However, as noted, the parties to the contract are the original members of SPBC along with any other persons later admitted as members under the terms of the agreement. Nothing in the contract purports to authorize an award of fees in litigation against a losing defendant who did not claim to be, and who was not asserted to be, a party to that contract.[8]

Nonetheless, plaintiffs argue that BT's assertion, in its answer and counterclaims, that it was not a party to the contract but that it was entitled to attorney fees if it prevailed, itself gives rise to a liability for fees because the statutes provide for reciprocity. Plaintiffs are incorrect. A mere assertion of a reciprocal right to fees under ORS 20.083 does not itself authorize fees that would not otherwise be allowable under the contract and the statutes. The statutes are intended to ensure that, where a claim is made under a contract that would allow the prevailing party to receive fees, a party defending against that claim may also receive fees, even if that party prevails by asserting a defense that the contract does not control. *See A & E Security and Electronic Solutions*, 253 Or App at 455 (ORS 20.083 authorizes an award of fees when a party to a contract action prevails by obtaining rescission of the contract); *King*, 240 Or App at 731-32 (under ORS 20.083, defendant, who prevailed in contract action by establishing that plaintiff was not a party who could enforce the contract, was entitled to an award of fees). It does *not*, however, independently give rise to an entitlement to attorney fees in circumstances like those here— where the parties have agreed from the beginning that the losing defendant was not a party to the agreement containing the attorney fee provision. In this case, the trial court did not err in declining to award attorney fees against BT.

D.   *Cross-appeal—Designation of prevailing parties*

In their remaining assignment of error on cross-appeal, plaintiffs contend that the trial court erred when it ruled that Emmert and Jehnke were not prevailing parties

---

[8] We also note that, not only was BT never asserted to be a party to the contract, but the trial court also ultimately agreed with plaintiffs that Taggart never effectively transferred an interest in SPBC to BT.

as to BT. In particular, as set forth above, the court ruled that "neither Terry Emmert and Keith Jehnke nor BT of Sherwood are prevailing parties with respect to each other." According to plaintiffs, "[a]s a matter of law, that ruling is in error. BT asserted counterclaims against Emmert and Jehnke, all of those claims were decided against BT; Emmert and Jehnke asserted counterclaims against BT, and a portion of those claims were decided in their favor." Specifically, BT brought claims against Emmert and Jehnke for breach of fiduciary duty and declaratory judgment; Emmert and Jehnke, for their part, sought declaratory relief and damages for conspiracy to interfere with a prospective economic advantage. As Emmert and Jehnke point out, the court granted them declaratory relief, and dismissed BT's claims (along with Emmert and Jehnke's other claims) with prejudice. Thus, according to plaintiffs, the trial court should have considered Emmert and Jehnke's request for costs and fees against BT.

Even assuming that plaintiffs are correct that the trial court erred in failing to designate Emmert and Jehnke as prevailing parties with respect to BT,[9] in light of our other conclusions—in particular, our conclusion that no attorney fees may be assessed against BT and the trial court's clear exercise of discretion to deny costs between Emmert and Jehnke and BT (discussed below)—plaintiffs do not identify any harm that they have suffered as a result of that error.

The only consequences that plaintiffs identify as flowing from the trial court's failure to designate them as prevailing parties with respect to BT are that the court also failed to award them costs or to consider their request for

_____

[9] We note that plaintiffs cite no authority in support of their contention that, in light of the claims raised between BT and Emmert and Jehnke, the court was required to designate Emmert and Jehnke as prevailing parties as a matter of law. *See* ORS 20.077(1) ("In any action or suit in which one or more claims are asserted for which an award of attorney fees is either authorized or required, the prevailing party on each claim shall be determined as provided in this section."); ORS 20.190 (setting forth prevailing party fees); *Brennan v. La Tourelle Apartments*, 184 Or App 235, 243, 245, 245 n 2, 56 P3d 423 (2002) (concluding that trial court was required to designate a prevailing party with respect to claims under ORS 90.255, but "express[ing] no opinion as to whether there is a need to designate a prevailing party regarding other kinds of claims"); *see also Beggs v. Hart*, 221 Or App 528, 537-38, 191 P3d 747 (2008) (in a case under ORS 20.077, the court must determine the prevailing party for each claim).

fees against BT. But, as we have explained, BT could not be charged with fees under the operating agreement and ORS 20.083 and ORS 20.096. Furthermore, with respect to costs, the trial court expressly exercised its discretion to deny costs, stating that it "relie[d] expressly on ORCP 68 B which grants the court discretion ('unless the court otherwise directs') vis a vis costs and disbursements."

ORCP 68 B provides:

> "In any action, costs and disbursements shall be allowed to the prevailing party unless these rules or any other rule or statute direct that in the particular case costs and disbursements shall not be allowed to the prevailing party or shall be allowed to some other party, *or unless the court otherwise directs*. If, under a special provision of these rules or another rule or statute, a party has a right to recover costs, such party shall also have a right to recover disbursements."

(Emphasis added.) "By giving a trial court authority to 'otherwise direct[],' ORCP 68 B empowers the court with discretion not to award costs and disbursements to a prevailing party. Thus, we review the trial court's decision to not award costs and disbursements for abuse of discretion." *AutoLend, IAP, Inc. v. Auto Depot, Inc.*, 170 Or App 135, 143, 11 P3d 693 (2000), *rev den*, 332 Or 240 (2001) (brackets in *AutoLend, IAP, Inc.*). The court did not abuse its discretion in declining to award costs in this case.[10]

Under those circumstances, the trial court's failure to designate Emmert and Jehnke as prevailing parties with respect to BT did not result in the denial of fees or costs to Emmert and Jehnke—they were not entitled to fees against BT in any event, and the trial court independently exercised its discretion to deny them costs. Thus, we conclude that this assignment of error does not provide a basis for remand. *See Barbara Parmenter Living Trust v. Lemon*, 345 Or 334, 338-39, 194 P3d 796 (2008) (declining to resolve whether trial court erred in designating a landlord as a prevailing party

---

[10] We reject plaintiffs' contention that the trial court was required to provide a more detailed explanation of its exercise of discretion to deny costs. The trial court properly cited ORCP 68 B as the source of its discretionary authority, and nothing in the court's explanation suggests that its exercise of discretion was based on a misunderstanding of the applicable law.

where "[t]he designation has not resulted in any harm to tenants").

On appeal, attorney fees and costs against Taggart reversed; otherwise affirmed. On cross-appeal, affirmed.