See 281 Or App 322, 383 P3d 409 (2016)

THE VILLAGE AT NORTH POINTE
CONDOMINIUMS ASSOCIATION,
aka The Association of Unit Owners of
the Village at North Pointe Condominiums,
an Oregon corporation,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

BLOEDEL CONSTRUCTION CO.,
an Oregon corporation;
and Rodger L. Bloedel, an individual,
*Defendants-Respondents*
*Cross-Appellants,*
*and*
BIG SKY CONSTRUCTION COMPANY,
an Oregon corporation;
*Defendant-Respondent*
*Cross-Respondent.*

BLOEDEL CONSTRUCTION CO.,
an Oregon corporation,
*Third-Party Plaintiff*
*Cross-Appellant,*

*v.*

BELANGER GENERAL CONTRACTING, INC.,
an Oregon corporation;
Brad Putnam, an individual,
dba Oceanside Enterprises;
KNP Builders, LLC,
an Oregon limited liability company;
Dominic Micherone, II, an individual;
Rich Manning Concrete, Inc., an Oregon corporation;
Walker Roofing, Inc., an Oregon corporation;
Jagow & Sons Roofing & Siding Co., Inc.,
an Oregon corporation;
Stephen Waldroup Construction, Inc.,
an Oregon corporation, dba Ultra Quiet Floors;
·Ernest O. Roberts, dba E & R Contractors,
an Oregon general partnership; and
Rich Manning, dba Rich Manning Concrete, Inc.,
*Third-Party Defendants-Respondents*
*Cross-Respondents,*

*and*

MASTERCRAFT RESTORATION
& MAINTENANCE, LLC,
an Oregon limited liability company;
*Third-Party Defendant.*

Lincoln County Circuit Court
082260; A151032

374 P3d 978

A. Richard Vial argued the cause for appellant-cross-respondent. With him on the briefs were Christopher M. Tingey, Michael D. Montag, and Vial Fotheringham LLP.

Janet M. Schroer argued the cause for respondents-cross-appellants Rodger Bloedel and Bloedel Construction Co. With her on the joint answering brief were Ruth C. Rocker and Hart Wagner LLP; Jonathan Henderson and Davis Rothwell Earle & Xochihua and Bruce R. Gilbert and Smith Freed & Eberhard PC for respondent Big Sky Construction Company. On the opening and reply briefs on cross-appeal were Janet M. Schroer, Ruth C. Rocker, and Hart Wagner LLP.

Thomas M. Christ argued the cause for respondents-cross-respondents Belanger General Contracting, Inc., and Jagow & Sons Roofing & Siding Co., Inc. With him on the briefs were Julie A. Smith and Cosgrave Vergeer Kester LLP.

Jonathan Henderson and Davis Rothwell Earle & Xochihua, P.C. filed the brief for respondent-cross-respondent Big Sky Construction Company.

No appearance for respondent-cross-respondent KNP Builders, LLC.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.*

---

* Shorr, J., *vice* Nakamoto, J. pro tempore.

**EGAN, J.**

In this construction defect case, plaintiff, The Village at North Pointe Condominiums Association, appeals from a general judgment and supplemental judgments following a jury verdict for defendant contractors, Bloedel Construction Co., Rodger Bloedel, and Big Sky Construction Company, and third-party defendant subcontractors, Belanger General Contracting, Inc., and Jagow & Sons Roofing & Siding Co., Inc.[1] Plaintiff asserts five assignments of error on appeal. We reject plaintiff's second and third assignments of error without written discussion. In its first assignment of error, plaintiff challenges the trial court's refusal to remove one of the jurors "at three points during the proceedings." With the exception of the trial court's denial of plaintiff's motion to remove the objectionable juror during *voir dire* for cause, plaintiff does not precisely identify which rulings it challenges, as required by ORAP 5.45(3), thus, we address only that identified ruling. As to that ruling, we conclude that plaintiff did not preserve before the trial court the contention that it raises on appeal. In its fourth assignment of error, plaintiff challenges the trial court's attorney fee award to Bloedel Construction. We conclude that plaintiff's argument has merit in one respect—the trial court should have apportioned fees incurred on insurance coverage issues, which were not recoverable by Bloedel Construction, from the fees incurred on the litigated claims, which were recoverable because they shared common issues with the fee-generating breach-of-contract claim. Finally, in its fifth assignment of error, plaintiff challenges the trial court's award of costs to Belanger and Jagow against plaintiff. We conclude that the trial court erred in relying on ORS 20.096 as authority for the cost awards, but could have exercised its discretion under ORCP 68 B to make those awards. Because we affirm the general judgment, we do not address the precautionary cross-appeal brought by Bloedel Construction and Bloedel. Accordingly, we affirm the general judgment, reverse and remand the attorney fee award in the supplemental judgment entered for Bloedel Construction and Bloedel for apportionment in accordance with this opinion, and vacate and

---

[1] Other subcontractors were part of the case; however, only Belanger and Jagow appear on appeal.

remand the supplemental judgments entered for Belanger and Jagow for reconsideration under ORCP 68 B.

The facts pertaining to the assignments of error on appeal that we address are procedural or undisputed. Plaintiff is a homeowners' association established to manage a 52-unit condominium building located in Depoe Bay, Oregon. Bloedel and Bloedel Construction developed and built the condominiums. Bloedel Construction and Big Sky acted as the condominium's declarants, and Bloedel served as the association's president until turning over control to the homeowners in 2003.

In 2008, plaintiff filed a complaint against Bloedel, Bloedel Construction, and Big Sky, asserting several claims for relief related to alleged construction defects in the condominiums that caused water intrusion. Bloedel Construction, in turn, brought third-party claims based on indemnity and contribution against the subcontractors who worked on the project and a cross-claim against Big Sky as one of the subcontractors.

At trial, plaintiff advanced five claims for relief: (1) negligence against all three defendants, (2) negligent misrepresentation against all three defendants, (3) unreasonable interference with use and enjoyment against all three defendants, (4) breach of fiduciary duties against all three defendants, and (5) breach of the condominium unit sales contracts against Bloedel Construction. After a lengthy trial, the jury returned a verdict for defendants on all of plaintiff's claims. As a result, the court entered a general judgment for defendants on plaintiff's claims and for the subcontractors on Bloedel Construction's third-party claims.

Following entry of the general judgment, as prevailing parties, Bloedel Construction sought to recover its attorney fees and costs, and the other defendants and third-party defendants sought to recover their costs. As relevant on appeal, in three supplemental judgments, the trial court taxed those fees and costs against plaintiff, as follows: (1) Bloedel Construction's attorney fees in the amount of $481,000 and Bloedel Construction's and Bloedel's costs

in the amount of $6,957.40; (2) Belanger's costs in the amount of $2,319.49; and (3) Jagow's costs in the amount of $2,269.49.

Plaintiff appeals the general judgment and the three supplemental judgments. We write to address plaintiff's challenge to the trial court's refusal to remove one of the jurors, the amount of attorney fees awarded to Bloedel Construction, and the award of costs to Belanger and Jagow.

## I. JUROR REMOVAL

During *voir dire* and trial, plaintiff sought to remove one of the jurors—Frey—from the jury. The trial court denied each of those efforts. On appeal, in a single assignment of error, plaintiff assigns as error the trial court's failure "to remove juror Frey at three points during the proceedings and thereby den[ying] plaintiff a fair trial before an impartial jury." Before reviewing the facts and arguments related to plaintiff's assignment, we first address defendants' challenge that plaintiff's assignment is unreviewable on appeal because it does not comply with the requirements of ORAP 5.45.

It is fundamental that, to obtain appellate review, "[e]ach assignment of error shall be separately stated" and "[e]ach assignment of error shall identify precisely the legal, procedural, factual, or other ruling that is being challenged." ORAP 5.45(2), (3); *see also* ORAP 5.45(1) ("Assignments of error are required in all opening briefs of appellants and cross-appellants."). We will not consider a claim of error if it is not assigned as error in the opening brief as required by ORAP 5.45(1). An assignment of error does not comply with ORAP 5.45(3) if "it assigns error to what is essentially a legal conclusion and not a specific ruling." *Rutter v. Neuman,* 188 Or App 128, 132, 71 P3d 76 (2003).

Compliance with ORAP 5.45 is not a matter of mere form; it is crucial to our ability to review trial court rulings for error and to determine whether the appellant's claims of error were preserved below. *See, e.g., Landauer v. Landauer,* 221 Or App 19, 23-24, 188 P3d 406 (2008) ("The grouping of a trial court's rulings under a single assignment of error hinders evaluation of each individual ruling on its merits

and is a practice that should not be followed."); *Association of Unit Owners v. Dunning*, 187 Or App 595, 605, 69 P3d 788 (2003) ("The association's assignment falls far short of that [ORAP 5.45(3)] requirement, leaving us to attempt to divine—by comparing the arguments on appeal with the arguments advanced in support of and opposition to each of the motions in the trial court—what the association is most likely getting at."). A failure to comply with ORAP 5.45 generally renders the claim of error unreviewable on appeal. *See, e.g., Strawn v. Farmers Ins. Co.*, 228 Or App 454, 475, 209 P3d 357 (2009), *aff'd in part and rev'd in part on other grounds*, 350 Or 336, 258 P3d 1199, *adh'd to on recons*, 350 Or 521, 256 P3d 100 (2011), *cert den*, ___ US ___, 132 S Ct 1142 (2012) (declining to reach claims of error because the noncompliance with ORAP 5.45 rendered the court unable to determine what rulings were being challenged and whether the bases for the challenges were preserved below); *Benjamin v. Wal-Mart Stores, Inc.*, 185 Or App 444, 464, 61 P3d 257 (2002), *rev den*, 335 Or 479 (2003) ("If a party does not identify a specific legal, procedural, factual, or other ruling by the trial court, ORAP 5.45(3), there is nothing for this court to review.").

Here, plaintiff has not identified any ruling of the trial court in its assignment of error, or even a legal conclusion made; rather, the assignment references only "three points during the proceedings" at which the trial court should have removed juror Frey, and nothing more. Although plaintiff's argument in support of the assignment sheds some light on the "three points during the proceedings" referred to, those "three points during the proceedings" raise different legal standards, different preservation issues, and, at least with respect to one of the "points," appears to implicate multiple rulings, none of which are identified with citations to the record by plaintiff. We are thus unable to discern from plaintiff's briefing which ruling plaintiff seeks to challenge or whether that challenge was preserved. *See, e.g., Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 224, 12 P3d 507 (2000) ("The requirement that an appellant set out the pertinent portions of the record in its opening brief is not a meaningless formality. Rather, the information the rules require enables the court and the opposing party to

identify the specific ruling the appellant assigns as error, determine whether an objection was properly preserved, and understand the basis for the trial court's ruling."). However, because plaintiff does identify in its argument one ruling sufficient for our review—the trial court's denial of plaintiff's motion to remove juror Frey for cause during *voir dire*—we address that challenge.[2]

At the start of the process of empanelling a jury in this case, the trial court informed the parties that one of the potential jurors in the jury pool, Frey, was in a domestic relationship with the court's bailiff and invited the parties to raise any concerns. No one voiced any concerns at that time. When Frey was called forward as a prospective juror, the trial court raised the issue again and asked the parties "if anybody has any misgivings, say so and we can simply excuse him for cause." After confirming that the court did not discuss cases with the bailiff, plaintiff's attorney responded, "I'm perfectly comfortable with it." No other party expressed any concerns at that time, and Frey remained as a potential juror.

Later in the *voir dire* process, Frey was discussed again as the parties and the court went through stipulated dismissals of potential jurors. Plaintiff stated that it would not object to dismissing Frey, but another party did object. At that point, plaintiff clarified that it was not seeking to dismiss Frey for cause, but that it was worried about the perception it might create:

> "I'm not suggesting that we've got any cause problem based on the answers that Mr. Frey gave to questions. I have merely responded to what I perceive to be the court's genuine concern.

---

[2] To the extent plaintiff does identify a "point during the proceedings" at which plaintiff argues that the trial court should have removed juror Frey *sua sponte* before *voir dire*, we also decline to review that claim of error as insufficiently presented to be considered for plain error review. *See* ORAP 5.45(1) ("[T]he appellate court may consider an error of law apparent on the record."); *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (to qualify as plain error, the error must be an error of law that is obvious and appears on the face of the record); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) (if error qualifies as plain error, we consider several factors that guide whether we will exercise our discretion to consider the error).

"And while I didn't—I didn't necessarily feel like it was that big a deal the first time you mentioned it. Frankly, I also didn't appreciate your concern as much. Now that I do, I think it's a legitimate concern. And I'm not worried about him as a juror. I am worried about the perception. And I think, therefore, it would be appropriate. But we're not going to spend a peremptory [challenge], as suggested by the defense, just because of that concern."

After some further colloquy between the court and the parties, plaintiff did move to excuse Frey for cause based on a concern that Frey kept trying to catch the eye of the bailiff and talk during *voir dire*, which plaintiff believed would be a concern at trial, and based on Frey's appearance of being strong-willed and gregarious, which indicated to plaintiff that he might not respond to direction from the court. The trial court denied the motion because plaintiff only raised issues of "perception" and Frey had not "manifested some kind of bias involving any of the parties"; the court offered to talk to the bailiff "about talking to [Frey] about toning it down if he's selected for the jury." Later, during peremptory challenges, plaintiff chose not to use a challenge available to it to excuse Frey as a juror when he was seated on the jury.

We review the trial court's denial of a motion to excuse a juror for cause for an abuse of discretion. *State v. Montez*, 309 Or 564, 575, 789 P2d 1352 (1990). "The trial court's judgment as to a prospective juror's ultimate qualifications is entitled to great weight." *Id.*

On appeal, plaintiff argues that, contrary to the trial court's ruling, it was not required to show that Frey was actually biased. Rather, plaintiff argues, because Frey was closely related to the court, through the bailiff, that relationship irreparably tainted the jury's verdict regardless of whether any actual bias existed, and the trial court thus had an obligation to remove Frey from the jury. In so arguing, plaintiff principally relies on the Wisconsin case of *State v. Tody*, 316 Wis 2d 689, 764 NW2d 737 (2009), *abrogated by State v. Sellhausen*, 338 Wis 2d 286, 809 NW2d 14 (2012). Plaintiff argues that this case is analogous to *Tody*, in which the court concluded that the trial judge's mother was a *per se* objectively biased juror because she was a member

of the judge's immediate family.[3] *Tody*, 316 Wis 2d at 706-07, 764 NW2d at 745-46. Plaintiff asserts that *Tody* identifies a similar basis for requiring juror removal as a for-cause challenge under ORCP 57 D(1)(f) ("[i]nterest on the part of the juror in the outcome of the action, or the principal question involved therein") and, thus, the principle articulated in that case has application in Oregon. Because, plaintiff reasons, the court was required to remove Frey under that principle, plaintiff further asserts that it was denied its constitutional right to an impartial jury when the court did not remove Frey. Defendants respond that plaintiff did not preserve that issue for appeal.

A party claiming error is required to preserve its argument before the trial court before we will consider it on appeal. ORAP 5.45(1). The preservation rule allows the opposing party an opportunity to respond and the trial court an opportunity to understand the position and avoid or correct the error. *Quick Collect, Inc. v. Higgins*, 258 Or App 234, 239, 308 P3d 1089 (2013). We agree that plaintiff did not preserve the argument that it advances on appeal.

Although plaintiff brought its for-cause challenge to Frey based, in part, on the concerns raised by the trial court that Frey's service could raise the perception of improper communication between Frey and the court, plaintiff did not argue that *the relationship* between Frey and the bailiff in itself required Frey's removal, did not advise the court of any legal basis for the trial court to remove Frey absent actual bias, and did not suggest to the trial court that failure to remove Frey would violate its constitutional right to an impartial jury. *Cf. State v. Rogers*, 313 Or 356, 372, 836 P2d 1308 (1992), *cert den*, 507 US 974 (1993) ("[B]ecause defendant has not asserted that any of the three jurors was actually biased or incapable of being an impartial juror, there can be no successful contention that defendant's state or federal *constitutional* rights to a fair and impartial jury

---

[3] We note that this aspect of *Tody* is no longer good law in Wisconsin. A majority of the Wisconsin Supreme Court in a concurrence to *Sellhausen* expressly abrogated the lead opinion in *Tody*, adopted the concurring opinion in *Tody* as controlling, and rejected the principle that a presiding judge's immediate family member, when sitting as a juror, is *per se* objectively biased. *Sellhausen*, 338 Wis 2d at 313, 809 NW2d at 28 (Ziegler, J., concurring).

were violated." (Emphasis in original.)). The arguments that plaintiff raises on appeal are fundamentally different from those that it asserted before the trial court. Thus, we do not consider them.[4]

Accordingly, we affirm the trial court's denial of plaintiff's motion during *voir dire* to excuse Frey as a juror.

## II. ATTORNEY FEES

Following entry of the general judgment, Bloedel Construction sought to recover its attorney fees from plaintiff. That attorney fee request was based on an attorney fee provision in the three contracts that formed the basis of plaintiff's breach-of-contract claim asserted against Bloedel Construction. *See Bennett v. Baugh,* 164 Or App 243, 246, 990 P2d 917 (1999), *rev den,* 330 Or 252 (2000) ("The prevailing party in a legal proceeding generally is not entitled to an award of attorney fees unless the award is authorized by statute or a specific contractual provision."). On appeal, plaintiff does not dispute that Bloedel Construction was entitled to attorney fees under the contract-fee provision for prevailing on plaintiff's breach-of-contract claim. Instead, plaintiff challenges the amount that the trial court awarded to Bloedel Construction on the grounds that the trial court failed to properly apportion the fees and awarded an unreasonable amount. Plaintiff's apportionment challenge rests on its argument that the fee-generating claim for breach of contract did not share common issues with the nonfee-generating claims or with defendants' insurance coverage issues, and, thus, the trial court should have awarded to

---

[4] We also note that, even if plaintiff's arguments on appeal were sufficiently preserved, plaintiff cannot complain that it was unconstitutionally denied an impartial jury under the circumstances presented here. Plaintiff had not exhausted its peremptory challenges when Frey was seated on the jury. Thus, plaintiff was not forced to accept Frey as a juror, and the court's refusal to remove Frey for cause cannot constitute prejudicial error. *See Lambert v. Srs. of St. Joseph,* 277 Or 223, 229, 560 P2d 262 (1977) ("A party whose peremptory challenges have not been exhausted is not in a position to complain of the overruling of his challenge for cause to a juror who afterwards serves on the panel."); *see also State v. Mannix,* 263 Or App 162, 172, 326 P3d 1236 (2014) ("A long and unbroken series of Oregon appellate cases establishes that '[t]he erroneous overruling of a good challenge for cause, thereby compelling the use of a peremptory challenge, is not prejudicial error where it does not appear that the challenger was compelled to accept an objectionable juror.'").

Bloedel Construction only those fees incurred in defending the breach-of-contract claim. With respect to that argument, we conclude that the trial court did not abuse its discretion in concluding that all the litigated claims were common with the breach-of-contract claim and did not require apportionment. However, we conclude that the record does not support a conclusion that the insurance coverage issues were also common and, thus, reverse and remand the attorney fee award to the trial court to apportion out fees incurred on the insurance coverage issues. We reject all of plaintiff's other arguments related to the reasonableness of the amount of the fee award.

A. *Factual and Procedural Background*

Plaintiff brought four claims for relief against Bloedel Construction, Bloedel, and Big Sky—negligence, negligent misrepresentation, nuisance, and breach of fiduciary duty—and a fifth claim for breach of contract against only Bloedel Construction. As pleaded, all of plaintiff's claims were based on the same substantive allegations regarding the defects in the construction of the condominiums and the resulting damages. Specifically, for the breach-of-contract claim, plaintiff incorporated into the claim all the general allegations—paragraphs 1 to 24— all the substantive allegations in each of the preceding four claims for relief—paragraphs 26 to 30, 33 to 43, 46, and 49 to 56—and the allegation setting out plaintiff's damages—paragraph 31—which was also incorporated into each of the five claims for relief. Plaintiff alleged as follows regarding the basis for its breach-of-contract claim against Bloedel Construction:

"Developer materially breached the terms of the unit sales agreements and Disclosure Statements by failing to provide the unit owners with defect-free and habitable units and by refusing to repair all defects at the Condominium, including defects in or to components of the units and common elements as set forth in paragraphs 18-20 and 22-24, and elsewhere herein, and all damages resulting from these defects."

(Boldface omitted.) According to plaintiff, plaintiff's evidence at trial for its claims had two components:

"(1) [E]vidence regarding the condominium's physical condition, the standards of care that defendants failed to meet in constructing the buildings, the repairs necessary to correct and ameliorate the construction defects, and the cost of those repairs; and (2) evidence regarding the deficiencies in the Association's financial condition when defendants turned over control of the association to the homeowners."

At trial, Bloedel Construction prevailed on all five claims that plaintiff brought against it; however, only the breach-of-contract claim provided for the recovery of attorney fees.[5]

In seeking attorney fees after trial, Bloedel Construction submitted lengthy attorney fee bills from the three law firms that represented it to substantiate the fees being requested. Two of those law firms were retained by Bloedel Construction's insurance carrier and worked as co-counsel defending both Bloedel Construction and Bloedel against plaintiff's complaint. The third law firm, Parsons Farnell & Grien, LLP, represented Bloedel Construction and Bloedel directly on insurance coverage issues that arose related to plaintiff's complaint, including obtaining the insurance defense.

Plaintiff objected to Bloedel Construction's fee request, arguing that the amount requested was unreasonable because (1) it included fees incurred to defend Bloedel, (2) it included fees incurred defending claims other than the breach-of-contract claim and in prosecuting third-party claims, (3) the three law firms' work was duplicative, and (4) the bills were insufficiently detailed to support the request in several respects, including that heavy redactions removed needed detail from the bills. In support of its last

---

[5] Plaintiff's breach-of-contract claim was based on three different unit sales agreements, each of which contained the same attorney fees provision. Those contract provisions provide:

"ATTORNEY FEES: The prevailing party in any suit, action or arbitration (excluding those claims filed in Small Claims Court) shall be entitled to recovery of all reasonable attorney fees and costs (including all filing and mediator fees paid in mediation) pursuant to ORCP 68. Provided, however, if a mediation service was available to the parties when the claim arose, the prevailing party shall not be entitled to any award of attorney fees unless it is established to the satisfaction of the arbitrator(s) or judge that the prevailing party offered or agreed to participate in mediation prior to, or promptly upon, the filing in arbitration or court."

argument, plaintiff also marked, entry-by-entry, which of its 11 objections relating to insufficient detail applied to each entry on the attorney fee bills submitted by Bloedel Construction.

At the hearing on fees, Bloedel Construction offered the testimony of an expert, David Hilgemann, to substantiate its attorney fee request. As relevant on appeal, Hilgemann testified that he reviewed the attorney fee bills and discounted about $4,000 related to the appeal and $5,000 for entries that were completely redacted, and added in about $3,000 for additional fees incurred up to the date of the hearing, for a total of $481,000. Hilgemann also testified that (1) the total amount of fees was a reasonable amount to charge, as he "would have anticipated that the fees in this case would easily have approached $1,000,000"; (2) the hourly rates of the two insurance defense counsel—$130 and $145—were "ridiculously reasonable" because the average ranges between $225 and $249 per hour; and (3) the hourly rates charged by Parsons Farnell—$325 and $225—were also reasonable, given the experience level of the attorneys. Plaintiff cross-examined Hilgemann, but did not introduce any contrary evidence or testimony.

In a letter opinion, the trial court analyzed the case law on fee apportionment and concluded that Bloedel Construction was not required to segregate its attorney fees incurred defending the fee-generating claim (breach of contract) from the nonfee-generating claims because the issues in the case were "common," as explained in *Bennett*; *Greb v. Murray*, 102 Or App 573, 795 P2d 1087 (1990); and *Sunset Fuel & Engineering Co. v. Compton*, 97 Or App 244, 775 P2d 901, *rev den*, 308 Or 466 (1989). Specifically, the trial court found that "[t]he issues in this case are no less 'common' than were the issues in *Bennett*"; "everything revolves around a new oceanfront condominium and whether or not it was constructed properly[; and t]he issues in each claim were common, despite the different legal theories advancing the defendants' prospective liability for the alleged defects."

As to the amount of the fees, the trial court awarded $481,000, as reasonable. The court reasoned, as follows:

"David Hilgemann's testimony was persuasive throughout. If, as Mr. Hilgemann asserted, Mr. Schanz and Mr. Michali are in the $179-208 per hour range (based on their experience), the hourly rate of each attorney should be pegged at the high end of the range: $208. The Court concurs that the $130 and $145 per hour, respectively, which each did charge was 'ridiculously reasonable' and 'incredibly reasonable.' Eventually, Mr. Hilgemann opined that $249 per hour for each attorney would have been a fair rate. Mr. Hilgemann also stated that instead of the $481,000 collectively charged by the attorneys, fees could reasonably have been expected to approach one million dollars for the work they did. Every penny of attorney fees sought by their clients is reasonable. Mr. Hilgemann insisted that despite the redactions and other items that could have been stricken, he felt the total fees of $481,000 should not be reduced based on discrepancies noted during questioning by Plaintiff because, overall, the total fees remained reasonable. The Court concurs."

The court also adopted and incorporated by reference into its letter opinion, "the comments voiced by Mr. Hilgemann and [defense counsel] as to each of the criteria" listed in ORS 20.075.[6]

On appeal, plaintiff raises several arguments contesting the amount of fees awarded by the court. Specifically, plaintiff argues that the trial court erred in awarding all of Bloedel Construction's requested attorney fees because (1) some of the fees were for work performed for Bloedel, who was not entitled to recover fees; (2) many of the nonfee-generating claims or issues could have been segregated from work on the fee-generating claim; (3) the attorneys' statements were insufficiently detailed and too heavily redacted to be considered; and (4) the modified "lodestar" applied by the trial court was improper without "first examining specific billing entries, ruling on plaintiff's objections to those entries, and backing out fee amounts where plaintiff's objections were well-taken."

---

[6] By its terms, ORS 20.075 requires a trial court to consider the factors listed in that statute when awarding attorney fees authorized by statute. Because the right to attorney fees in this case arose from contract, the trial court was not required to consider those factors. However, plaintiff does not suggest that the trial court abused its discretion in doing so. At the hearing, Bloedel Construction discussed each of the 16 factors listed in ORS 20.075(1) and (2). Because the individual factors are not necessary to our discussion, we do not set them out here.

"We review the trial court's rulings regarding [Bloedel Construction's] entitlement to attorney fees for errors of law, and its determinations regarding a reasonable amount of such an award for an abuse of discretion." *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 255 Or App 524, 549, 300 P3d 1224, *adh'd to as modified on recons*, 257 Or App 180, 306 P3d 661, *rev den*, 354 Or 491 (2013). In accordance with that standard, "[w]e review the trial court's decision apportioning fees between a fee-generating claim and a non-fee-generating claim for abuse of discretion." *R & C Ranch, LLC v. Kunde*, 177 Or App 304, 316, 33 P3d 1011 (2001), *adh'd to as modified on recons*, 180 Or App 314, 44 P3d 607 (2002). Here, plaintiff raises objections that relate only to the trial court's determinations regarding the reasonableness of the amount of fees it awarded; thus, we review each of those objections for an abuse of discretion.

B. *Apportionment*

We begin with a combined discussion of plaintiff's first and second argument listed above. Plaintiff brought the fee-generating claim, breach of contract, only against Bloedel Construction. But plaintiff brought the four other nonfee-generating claims against Bloedel Construction and Bloedel. Thus, plaintiff's first objection—that the trial court should have apportioned fees between Bloedel Construction and Bloedel—can largely be answered by addressing plaintiff's second objection—that the trial court should have apportioned fees between the nonfee-generating claims and the fee-generating claim.

Generally, "[w]hen a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the trial court must apportion attorney fees, except when there are issues common to both claims." *Bennett*, 164 Or App at 247. "That [common issue] exception [to apportionment] is based on the premise that attorney fees should not be subject to apportionment when the party entitled to fees would have incurred roughly the same amount of fees, irrespective of the additional claim or claims." *Perry v. Hernandez*, 265 Or App 146, 149, 333 P3d 1188 (2014). "A trial court is given wide discretion in making the necessary factual determinations

imposed by the legal requirement to segregate claims that are covered by an attorney fees provision from those that are not." *Malot v. Hadley*, 102 Or App 336, 341, 794 P2d 833 (1990).

We reject plaintiff's contention that the trial court was required to apportion fees in this case, with the exception of the insurance coverage issues, which we explain separately from the litigated claims. With regard to the litigated claims, by plaintiff's own admissions, plaintiff's case had two evidentiary components:

> "(1) [E]vidence regarding the condominium's physical condition, the standards of care that defendants failed to meet in constructing the buildings, the repairs necessary to correct and ameliorate the construction defects, and the cost of those repairs; and (2) evidence regarding the deficiencies in the Association's financial condition when defendants turned over control of the association to the homeowners."

The first component encompassed all of plaintiff's claims, including the breach-of-contract claim. The second component encompassed plaintiff's breach-of-fiduciary-duty claim, as well as plaintiff's breach-of-contract claim, because plaintiff incorporated the fiduciary-duty allegations into its breach-of-contract claim against Bloedel Construction. Based on how plaintiff chose to plead its claims, both components of plaintiff's proof were part of its breach-of-contract claim. In addition, plaintiff sought identical damages for each of its five theories.

Likewise, Bloedel Construction's third-party claims against the subcontractors were based on indemnity and contribution, which, by the very nature of those claims, were common to the fee-generating contract claim that plaintiff brought against Bloedel Construction. Although third-party claims will not always be "common" with a fee-generating claim brought by a plaintiff, in this case the trial court found that all the litigated claims were common because "everything revolve[d] around a new oceanfront condominium and whether or not it was constructed properly[; and t]he issues in each claim were common, despite the different legal theories advancing the defendants' prospective liability for the alleged defects." On appeal, plaintiff has offered

no argument or explanation why, under the facts of this case, the third-party claims were not common to its breach-of-contract claim.

Based on how plaintiff proceeded with its case, the trial court did not abuse its discretion in concluding that all the litigated claims were common to plaintiff's breach-of-contract claim.

For much the same reasons, the trial court also did not abuse its discretion in not apportioning fees between Bloedel Construction and Bloedel, individually. As noted, plaintiff brought all the same claims against Bloedel Construction and Bloedel, with the exception of the breach-of-contract claim. Again, the allegations plaintiff brought were the same as to Bloedel Construction and Bloedel. Bloedel Construction represented that it is a small company comprised of Roger Bloedel and his wife. There is no indication from the record that the fees incurred by Bloedel Construction were not "roughly the same amount of fees" that it would have incurred irrespective of the same claims also being brought against Bloedel. *Perry*, 265 Or App at 149.

In arguing that the trial court legally erred in failing to apportion fees between Bloedel Construction and Bloedel, plaintiff relies on *Vertopoulos v. Siskiyou Silicates, Inc.*, 177 Or App 597, 34 P3d 704 (2001). In that case, there were two jointly represented defendants. One of the defendants was entitled to fees and the other was not. We concluded that the trial court did not abuse its discretion "in recognizing that both [the defendants] were jointly responsible for the fees and apportioning the fee award accordingly." *Id.* at 605. Thus, contrary to plaintiff's assertion, we reviewed the issue for an abuse of discretion, not for legal error—*viz.*, the apportionment of fees between defendants was an issue of the reasonableness of the fees and not one of entitlement. In that case, we concluded the trial court did not abuse its discretion in apportioning the fees based on the circumstances of that case. Here, we conclude that the trial court did not abuse its discretion in not apportioning fees between the two defendants based on the circumstances present in this case.

However, we do agree with plaintiff in one respect on its apportionment argument—the fees Bloedel Construction incurred related to insurance coverage issues. The trial court did not explicitly address that aspect of plaintiff's argument in its letter opinion and it is not otherwise apparent from the record that insurance coverage is a "common issue" with the breach-of-contract claim. To the contrary, the fees incurred by Bloedel Construction on insurance coverage issues are not in common with the breach-of-contract claim because whether the insurance policy covered plaintiff's claims raised issues wholly separate from the litigation of the merits of that claim. Also, those fees could easily be segregated as Bloedel Construction hired separate counsel—Parsons Farnell—to specifically handle insurance coverage. Accordingly, we reverse and remand the attorney fee award for the trial court to address apportionment of fees between fees incurred on the insurance coverage issue, which are not recoverable by Bloedel Construction, and the "common issue" claims, which are.

## C. *Overall Reasonableness*

We turn to plaintiff's two remaining arguments regarding the reasonableness of the amount of fees awarded to Bloedel Construction. We start with plaintiff's final argument, which is that the trial court erred in applying, what plaintiff terms, a modified "lodestar" to determine the total amount of fees it would award to Bloedel Construction. In determining the attorney fee award, the trial court took into account Hilgemann's testimony, the billing statements, the reasonableness of the hourly rates of the attorneys, a reasonable amount of fees a party could expect to incur in a similar case, and the factors listed in ORS 20.075. The trial court then determined that $481,000 was a reasonable attorney fee amount. Plaintiff argues that that was improper because the trial court should have "first examin[ed] specific billing entries, rul[ed] on plaintiff's objections to those entries, and back[ed] out fee amounts where plaintiff's objections were well-taken." We disagree. Neither the contracts governing the award of attorney fees, nor Oregon law, required the trial court to use a particular method for calculating a reasonable amount of attorney fees in this case. The method

used by the trial court was within the bounds of reason and supported by the evidence, and, thus, was not an abuse of the trial court's discretion.

As to plaintiff's remaining argument—that the attorney fee bills were insufficiently detailed and too heavily redacted to support an attorney fee award—we reject it for much the same reason. The trial court was permitted to determine the overall reasonableness of the attorney fee award without providing detailed responses to plaintiff's objections to hundreds of billing entries submitted by Bloedel Construction. We have reviewed the bills and, on the whole, those bills were sufficiently detailed for the court to determine the reasonableness of the fees requested based on the method the court used to make that determination.

Accordingly, we reverse and remand the attorney fee award for the court to apportion fees in accordance with this opinion, but otherwise affirm the award.

## III.  THIRD-PARTY DEFENDANTS' COSTS

Finally, in its fifth assignment of error, plaintiff challenges the trial court's award of costs to Belanger and Jagow against plaintiff. Because we conclude that the trial court erred in relying on ORS 20.096(1) as the basis for those cost awards, we vacate and remand Belanger's and Jagow's cost awards to the trial court for reconsideration under ORCP 68 B, as explained below.

Following the entry of judgment for Belanger and Jagow and against Bloedel Construction on the third-party claims, both Belanger and Jagow submitted cost bills to the court. Those cost bills did not specify from which party Belanger and Jagow sought to recover their costs, nor did they specify a basis for their entitlement to recover costs. Bloedel Construction, however, included Belanger's and Jagow's cost bills in its own cost bill to the court as the prevailing party against plaintiff, based on ORCP 68, and filed objections to both Belanger's and Jagow's bills. Plaintiff also filed objections to both Belanger's and Jagow's bills, arguing that it was not liable for their costs.

At the hearing on costs, Belanger and Jagow clarified that they sought to recover their costs from plaintiff, and not from Bloedel Construction. They argued that, based on the comparative fault statutes and the jury verdict form in this case, if the jury had found Bloedel Construction at fault for the alleged construction defects, and if the jury had also found third-party defendants at fault for the alleged construction defects, then plaintiff would have obtained a several liability judgment directly against each third-party defendant for damages in the percentage amount of that third-party defendant's fault. As a result, under that scenario, plaintiff would have been the prevailing party against those third-party defendants. Belanger and Jagow argued that thus the reverse should also be true—they should be deemed the prevailing parties against plaintiff because, by prevailing on the third-party claims, they really prevailed on plaintiff's construction defect allegations. For its part, Bloedel Construction also alternatively argued that, if the court awarded Belanger and Jagow their costs as against it and not plaintiff, then it should be permitted to, in turn, tax those costs against plaintiff as part of the costs that it incurred in its defense, as permitted by ORCP 68.

Plaintiff asserted in response that no one had pointed to a source of authority under which the court could award a third-party defendant costs against a plaintiff. Plaintiff further argued that the third-party action is a separate action—plaintiff played no role in selecting the third-party defendants or in prosecuting claims against them— and, thus, there is nothing for the third-party defendants to prevail on as against plaintiff.

The trial court awarded both Belanger and Jagow costs against plaintiff in two separate supplemental judgments. In its letter opinion, the court explained that it was authorized to award costs against plaintiff "in light of ORS 20.096(1), which provides that such attorneys fees and costs are recoverable by the party who prevails on a contract claim *without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.*" (Emphasis in original.) The court reasoned that the reciprocity provision

in that statute authorized it to award costs here because the scope of that statute is stated broadly to cover nonsignatories to the contract on which a plaintiff sues, and it does not prohibit its applicability to a third-party defendant.

On appeal, plaintiff argues that the trial court legally erred in relying on ORS 20.096 as authority for the cost award to Belanger and Jagow. Plaintiff asserts that an award under ORS 20.096(1) to a nonparty to a contract is limited to instances where a nonparty prevailed on a contract claim brought against it based on a defense that it was a nonparty to the contract or that renders the contract void or unenforceable. Because those circumstances do not apply here, plaintiff asserts that the cost awards to Belanger and Jagow should be reversed.

Belanger and Jagow, for their part, do not defend the trial court's stated basis for the cost awards. Instead, they reprise the argument they made below based on the comparative fault statutes, ORS 31.600(2) and ORS 31.610(2), and also argue that the award was authorized under ORCP 68 B as a more direct means of taxing their costs to plaintiff, as argued below by Bloedel Construction.

We start with the trial court's stated basis for the award—ORS 20.096(1)—and conclude that the court erred in relying on that statute. That statute provides:

"In any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, *without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.*"

ORS 20.096(1) (emphasis added). We explained in *Sherwood Park Business Center, LLC v. Taggart*:

"The statutes [ORS 20.096 and ORS 20.083] are intended to ensure that, where a claim is made under a contract that would allow the prevailing party to receive fees, a party defending against that claim may also receive fees, even if that party prevails by asserting a defense that the contract

does not control. \* \* \* It does *not,* however, *independently* give rise to an entitlement to attorney fees in circumstances like those here—where the parties have agreed from the beginning that the losing defendant was not a party to the agreement containing the attorney fee provision."

267 Or App 217, 236, 341 P3d 96 (2014) (emphasis in original); *see also id.* at 234 ("Neither of the statutes in question works to create liability for attorney fees under a contract against a party who was not alleged to be, and never claimed to be, a party to that contract."). Here, none of the parties alleged that Belanger or Jagow were a party to the contracts that formed the basis for plaintiff's breach-of-contract claim, nor did plaintiff assert a breach-of-contract claim against them. In addition, neither Belanger nor Jagow sought an award of costs (or fees) based on that contract. The trial court erred when it concluded that ORS 20.096 could provide a statutory basis for Belanger and Jagow to recover costs against plaintiff.

We thus turn to Belanger's and Jagow's alternative arguments in support of the cost awards, which were raised below, and conclude that the discretion granted to a trial court to award costs under ORCP 68 B could authorize an award of costs to a third-party defendant against a plaintiff.

In general, ORCP 68 B authorizes a trial court to award costs and disbursements to the prevailing party "unless these rules or any other rule or statute direct that in the particular case costs and disbursements shall not be allowed to the prevailing party or shall be allowed to some other party, or unless the court otherwise directs." The words "unless the court otherwise directs" imbues the trial court with significant discretion in deciding to award costs, or to not award costs, to a prevailing party. *Johnson and Johnson,* 276 Or App 408, 415, 367 P3d 952 (2016).

However, nothing in ORCP 68 B directs against whom the trial court must tax a prevailing party's costs and disbursements. In a case with only plaintiffs and defendants, once the prevailing party is determined, the answer of who is the adverse party to be taxed with costs is usually obvious. In cases that have third-party plaintiffs and

third-party defendants, however, the answer may not be so obvious. In third-party practice, the defendant may file a third-party claim against a third-party defendant that is or may be liable to the plaintiff for the plaintiff's claim against the defendant. ORCP 22 C(1) ("After commencement of the action, a defending party, as a third party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff ***."). The third-party defendant may then defend against the third-party action by asserting any defense against the plaintiff that the defendant could assert against the plaintiff, or the third-party defendant may defend based on a defense asserted against the defendant directly. ORCP 22 C(1).

In a case where the third-party defendant defends directly against the claim that the plaintiff has brought against the defendant, the third-party defendant and the defendant may not hold adverse positions, but the third-party defendant and the plaintiff will be adverse, even though the plaintiff did not bring a claim directly against the third-party defendant. And, as pointed out by Belanger and Jagow, the plaintiff can obtain judgments directly against third-party defendants who are at fault for the plaintiff's damages, even if the plaintiff did not bring a claim against the third-party defendant. *See* ORS 31.600(2) ("The failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact under this subsection."); ORS 31.610(2) ("The court shall enter a judgment in favor of the plaintiff against any third party defendant who is found to be liable in any degree, even if the plaintiff did not make a direct claim against the third party defendant."). In those circumstances, taxing a prevailing third-party defendant's costs against the prevailing defendant, instead of against the nonprevailing plaintiff, would not serve the policy behind allowing a prevailing party's costs. Plaintiff argues, however, that there is no authority for a trial court to tax the prevailing third-party defendant's costs against the nonprevailing plaintiff. We conclude that ORCP 68 B provides that authority.

In not directing against whom a prevailing party's costs must be taxed, ORCP 68 B does not place limits on the trial court's discretion in making that determination. ORCP 68 B provides, in part:

"In any action, costs and disbursements shall be allowed to the prevailing party unless these rules or any other rule or statute direct that in the particular case costs and disbursements shall not be allowed to the prevailing party or shall be allowed to some other party, or unless the court otherwise directs."

As noted above, the phrase "unless the court otherwise directs" gives the trial court discretion to determine the allowance of costs to the prevailing party. In the absence of rule or statute directing the court otherwise, that necessarily also grants the discretion to determine against whom those allowed costs are taxed.

ORCP 68 A(2) also provides some guidance on this issue. As relevant here, ORCP 68 A(2) defines "costs and disbursements" as "reasonable and necessary expenses *incurred in the prosecution or defense of an action*, other than for legal services[.]" (Emphasis added.) Thus, the costs that the trial court has the discretion to allow are those incurred in the defense (or prosecution) of an action. In a third-party action, a prevailing third-party defendant could be allowed to recover costs incurred in the defense of the action. As discussed above, that defense could have been directed at either defending the plaintiff's claim directly, or defending the third-party claim. In that respect, to determine against whom costs should be taxed, the trial court must determine in what manner the claimed defense costs were incurred. The trial court could, in its discretion, determine that the third-party defendant's costs should be taxed against the plaintiff if, as discussed above, the adverse party was functionally the plaintiff, even if the plaintiff did not bring a claim against the third-party defendant.[7] ORCP 68 B, by its

---

[7] We note that other jurisdictions have followed this approach. *See Bonaparte v. Neff*, 116 Idaho 60, 773 P2d 1147 (Idaho App 1989) (Burnett, J., specially concurring) (within discretion of trial court to allocate costs of the prevailing third-party defendant to the nonprevailing plaintiff by determining "on a functional basis" which parties are adverse to each other); *Copper Sands Homeowners v. Flamingo 94 Ltd.*, 130 Nev Adv Rep 81, 335 P3d 203 (Nev 2014) (adopting rationale of *Bonaparte*).

terms, does not limit the trial court's discretion in resolving the allocation of the taxing of costs to parties; as a result, the trial court is authorized to make those discretionary calls unless another rule or statute directs otherwise.

Here, plaintiff does not dispute that Belanger and Jagow were prevailing parties entitled to recovery of costs and disbursements under ORCP 68 B. Plaintiff disputes only that Belanger and Jagow could recover their costs from plaintiff, instead of from Bloedel Construction, which brought the third-party action. Because we conclude that ORCP 68 B does grant discretion to a trial court to tax a prevailing third-party defendant's costs to a nonprevailing plaintiff when the circumstances of the case support it, we reject plaintiff's legal challenge to the cost awards. However, because the court did not exercise its discretion under ORCP 68 B here, but relied on an erroneous interpretation of ORS 20.096 to award costs, we vacate and remand the cost awards to the trial court for reconsideration. *See Selective Services, Inc. v. AAA Liquidating*, 126 Or App 74, 79, 867 P2d 545 (1994) ("Because the trial court's decision was based, not on an exercise of its discretion under ORCP 68 B, but instead on an incorrect legal conclusion, we reverse and remand for reconsideration of AAA's cost bill.").

On appeal, supplemental judgment awarding attorney fees to Bloedel Construction Co. reversed and remanded; supplemental judgments awarding costs to Belanger General Contracting, Inc., and Jagow & Sons Roofing & Siding Co., Inc., vacated and remanded; otherwise affirmed. On cross-appeal, affirmed.